HOSKINS, Respondent, *v.* SCOTTISH UNION & NATIONAL INSURANCE CO., Appellant.

(No. 4,242.)

(Submitted January 7, 1921.  Decided February 4, 1921.)

[195 Pac. 837.]

*Reformation of Instruments — Fire Insurance Policy — Mutual Mistake — Evidence — Insufficiency — Equity — Findings — Specific Findings — Verdict — Theory of Case — Burden of Proof.*

Equity—Verdict of Jury Advisory—Trial—Submission of General Issue—Special Interrogatories—Refusal—Not Error.
1.   Since a jury in an equity case acts only in an advisory capacity and the ultimate decision rests with the court, neither submission of the general issue to them nor refusal to submit special interrogatories, no matter how pertinent, constitutes reversible error.

Appeal and Error—Specific Findings—Duty of Party.
2.   Under section 6763, Revised Codes, a judgment will not be reversed for failure of the trial court to make specific findings where the complaining party did not, at the close of the evidence and argument, make request therefor in writing and cause such request to be entered in the minutes.

Equity—Findings—Evidence—Insufficiency—Appeal and Error.
3.   A decree in an equity case will not be set aside on the ground of insufficiency of the evidence to support the findings, unless they are against the decided preponderance of the evidence.

Reformation—Theory of Case.
4.   Where plaintiff in an action on a fire insurance policy proceeded in the district court upon the theory that reformation of the policy was necessary to enable him to recover, he could not on appeal change

———————————————————

4.   Reformation of insurance policies, see note in 65 Am. St. Rep. 514.

' his former theory and urge that recovery could be had without refor-
mation of the instrument.

Same—Mistake must be Mutual.

5. Reformation of a contract cannot be had unless it appears that
the contract as actually written does not express the contract as
understood and agreed upon by both parties at the time it was
negotiated,—the mistake must have been mutual.

Same—Evidence—Insufficiency.

6. In an action for reformation of a fire insurance policy, and
recovery thereon when reformed, evidence reviewed and *held* insufficient
to warrant a finding that plaintiff and defendant's agent both under-
stood, at the time it was written, that it should cover the contents of
two buildings, one of which was destroyed by fire.

Same—Burden of Proof.

7. In an action to reform an instrument, the burden of proving that
the mistake relied upon for reformation was mutual was upon
plaintiff.

*Appeals from District Court, Missoula County; Asa L. Dun-
can, Judge.*

ACTION by Joseph Hoskins against the Scottish Union &
National Insurance Company. From a decree for plaintiff
and an order denying a motion for a new trial, defendant
appeals. Reversed.

Cause submitted on briefs of Counsel.

*Mr. Harry H. Parsons, Mr. E. Eugene Davis* and *Messrs.
Hall & Pope,* for Appellant.

*Messrs. Patterson, Heyfron & Simes* and *Messrs. Mulroney &
Mulroney,* for Respondent.

MR. JUSTICE REYNOLDS delivered the opinion of the
court.

This action is brought for reformation of an insurance
policy issued by appellant to respondent, and for recovery
upon the policy as reformed. The policy, by its terms, covered
personal property therein described "all while contained in
the two-story frame building and its addition, while occupied
as a boarding and rooming house, between ten and fifteen
rooms, situated in the town of Ravalli, Missoula county, Mon-
tana, and known as the Ravalli Hotel."

The complaint alleges, in substance, that it was the intention of the parties that the policy should cover the property contained in the building known as the Ravalli Hotel proper and another building about forty-three feet distant therefrom, known as the Ravalli Hotel Annex, which latter building was used as a lodging-house in connection with the hotel. The complaint alleges that the policy should be reformed and amended to state, in the portion of the policy describing the property insured, as follows:

"All while contained in the two frame buildings and their additions, one being of about twenty rooms and one being of about fifteen rooms, while occupied as boarding and rooming houses, or used as such, at the time the agreement for said insurance was made situated in the town of Ravalli, Missoula county, Montana."

Trial was had before the court sitting with a jury. The court submitted to the jury the general issue, also one special interrogatory, both of which were resolved by the jury in favor of plaintiff. After verdict, defendant requested certain specific findings which were refused. The court adopted the general verdict and special finding of the jury and rendered decree in favor of plaintiff. By this decree the policy was reformed, not as prayed for in the complaint, but in such manner that the policy, as reformed, would cover only the contents of the hotel annex. Motion was made for new trial, which was overruled. Appeal was taken from the judgment and order.

Error is assigned because the court submitted the general [1] issue to the jury and refused to submit to the jury for its answer certain special interrogatories proposed by defendant. While it may be irregular to submit the general issue to the jury for a general verdict in an equity case, yet, inasmuch as the action of the jury is only advisory, and the ultimate decision of the case rests with the court, such irregularity cannot be deemed reversible error. The same principle applies to the contention that the court erred in refusing to submit

to the jury certain special interrogatories proposed by the defendant, no matter how pertinent such interrogatories may have been.

The court refused to make certain findings requested by [2] defendant, to which refusal exception was taken. The verdict of the jury was rendered upon the twelfth day of May, 1917, and upon the ninth day of June, 1917, defendant filed its request for the adoption of certain proposed findings. No request for findings was made at the close of the evidence and argument in the cause, nor was any request entered in the minutes of the court. While it is the duty of the court to make findings on questions of fact tried to the court (Rev. Codes, sec. 6763), nevertheless "no judgment shall be reversed on appeal for want of findings at the instance of any party who, at the close of the evidence and argument in the cause, shall not have requested findings in writing and had such request entered in the minutes of the court" (Rev. Codes, sec. 6766). This statute must be construed to mean not only that no judgment shall be reversed for want of findings in such cases, but that no judgment shall be reversed for failure of the court to make specific requested findings at the instance of any party who, at the close of the evidence and argument, shall not have made his request in writing and had such request entered in the minutes of the court. The trial court cannot be put in error for failure to make findings even though requested, unless the request therefor is made and minuted at the time required by the statute. (*State ex rel. Quintin* v. *Edwards,* 40 Mont. 287, 20 Ann. Cas. 239, 106 Pac. 695.) Not having requested the court to make findings until after the verdict, and not having such request entered in the minutes of the court, defendant is not in a position to raise any question upon the refusal of the court to find as requested.

It is contended by defendant that the court erred in denying [3] defendant's motion for judgment at the close of plaintiff's case, in entering decree for plaintiff, and in overruling defendant's motion for a new trial. These assignments of

error raise the question as to the sufficiency of the evidence to support the findings. As has heretofore been held by this court the decree of the trial court, in an equity case, will not be set aside on the ground that the evidence is insufficient to support the findings, unless the findings are against the decided preponderance of the evidence. (*Steiner* v. *McMillan, ante,* p. 30, 195 Pac. 836, and cases cited.) This court will consider, then, whether or not the findings upon which the decree was founded were against the decided weight of the evidence.

The decree purports to reform the contract of insurance and make it apply exclusively to the contents of the hotel annex. In this respect there can be no question but that the decree is contrary to all of the evidence, for there is nothing in the record to the effect that the insurance policy was intended to cover only the contents of the annex. While it is true that the policy misstates the number of rooms in the building and refers to it as a two-story building when it was really only a story and a half building, it is perfectly clear that the description was construed by both parties as applicable to the hotel proper. Plaintiff's contention in his complaint, supported by his evidence upon the trial, is that the agreement was that the policy should cover his household furniture and other personal property therein mentioned contained in both the Ravalli Hotel proper and the annex. While the evidence does not support the decree in this particular, the error is not material, for this case does not involve any claim for loss upon property in the hotel proper.

Respondent urges in this court for the first time that the [4] building that burned was included within the description of the policy, and that the decree should be affirmed even though reformation of the policy should be denied. The complaint states a cause of action exclusively for reformation of the contract of insurance and for recovery thereon as reformed. It expressly alleges: That the policy as issued "failed to mention and include the personal property in each of said buildings as agreed upon as herein mentioned, and as

said defendant had agreed and as it was the duty of the defendant so to do, but said defendant fraudulently failed, omitted, and neglected so to do, * * * and caused plaintiff to be prejudiced by relying upon said policy covering said personal property in said smaller building." The complaint also alleges: "That plaintiff has demanded of defendant that said defendant reform said policy of insurance so that it will cover the personal property contained in both of said buildings, including the personal property herein mentioned, which was destroyed as aforesaid, * * * but said defendant fraudulently fails and refuses to reform said policy."

Upon the trial objection was made to the introduction of evidence of conversations between plaintiff and the insurance agent prior to the writing of the policy, on the ground that it was an attempt to vary the terms of a written contract; whereupon one of the attorneys for plaintiff made the following statement: "We have set up what the agreement was and it was not the policy as it was agreed and we ask that it be reformed." Thereupon the trial proceeded upon the theory that the policy did not express the alleged agreement and that reformation of the policy was necessary to support a recovery. Respondent having stood upon this theory throughout the trial, he cannot now change front and recover in this action upon the policy without reformation.

Reformation of a contract cannot be had unless it appears [5] that the contract as actually written does not express the contract as understood and agreed upon by both parties at the time it was negotiated. It is not enough for one party to say that he understood that the contract should be made in a certain way, for that lacks the essential element of mutuality. For a mistake on his part alone a rescission of the contract may be decreed, but the other party cannot be compelled to accept his understanding of the contract and to fulfill it in accordance with that understanding, unless it also affirmatively and clearly appears that the other party had the same understanding; in other words, the mistake must be

mutual. (34 Cyc. 915, 919; *Fitschen* v. *Thomas*, 9 Mont. 52, 22 Pac. 450.) In this case, before plaintiff can recover, he must clearly show not only that he understood that the contents of the annex were covered, but also that defendant through its agent had the same understanding.

The evidence shows that the plaintiff negotiated the policy [6] with one H. J. Morison, and the conversation between the two as to what should be covered by it was not overheard by any other person. The plaintiff testified that ·the bulk of his furniture was in the hotel proper and that the rest was in the annex; that the annex was used in connection with the hotel for the purpose of lodging customers, and in that sense was considered by him as a part of the hotel; that he took Morison through both buildings and showed him what he had, and that Morison looked at the location of the rooms and chimneys and said: "All right; you will be fully covered. I will fix this up." After the policy was written and before it was delivered, plaintiff and Morison had a conversation regarding it in which the latter said: "Joe, don't worry. You are fully covered to the amount of $500. Trust me." Plaintiff also testified that he understood that the policy was to cover the property in both buildings. The foregoing constitutes the substance of all the evidence in the case from which any possible inference could be made that Morison had within his contemplation the writing of insurance on the contents of the. annex.

In opposition to the testimony of the plaintiff, Morison testified that he did not go into the annex at all nor examine it; that he solicited of plaintiff insurance upon the property in the annex, but that plaintiff declined to take out a policy thereon for the reason that he could not afford to carry any more insurance, and for the further reason that the most of the goods in the annex, being in boxes, could easily be removed from the building in case of fire. The undisputed testimony shows that in fixing the rate to be charged upon the risk, plaintiff and Morison measured the distance between the hotel

proper and the annex in order to determine the exposure, and that the rate which was given was the basic rate as modified by the exposure and the number of rooms in the building as stated by plaintiff. After the policy was written, a duplicate rider attached to the policy, showing the rate and property covered, was sent by the agent to the board of underwriters to be checked as to rate, in accordance with custom in writing such policies. The board of underwriters insisted that the rate should be increased by twenty-five cents per hundred, for the reason that in the Ravalli Hotel was a stovepipe flue. Morison, being under the impression that the board of underwriters was in error in this respect, went to Ravalli and told plaintiff of the ruling, and thereupon plaintiff showed Morison that there was a stovepipe flue in the hotel proper. There was not any stovepipe flue in the annex. Upon ascertaining that the stovepipe actually existed, the change in the rate was made. The undisputed testimony further shows that, whenever a policy is written to cover the contents of two separate buildings, the amount of the risk upon the contents of each building must be specified, and that a policy is never written covering the contents of two separate buildings under one blanket sum.

From the foregoing it can readily be seen that there is no substantial evidence showing that Morison had any understanding whatever that the policy was to be written to cover the contents of both buildings. Morison, in stating that everything was covered, could easily have meant that the policy would cover all in the hotel proper, without having any reference at all to the annex. The mere fact that Morison might have gone into the annex and looked at its contents, as testified by plaintiff, does not establish the fact that he agreed with plaintiff that those items should be covered in the policy. The other facts in the case show clearly that he did not contemplate the writing of a policy to cover the contents of both buildings, but rather that his mind was centered upon writing insurance upon the contents of only the hotel proper.

Even though plaintiff may have understood that the contents of the annex were covered, yet his case lacks the necessary element of mutuality as to the agreement, to establish his contention that the court should reform the policy in this [7] respect. With the burden resting upon him to clearly prove his case and failing so to do, the relief prayed for must be denied.

The decree and order are reversed, and the cause is remanded, with directions to render decree in favor of defendant.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES COOPER, HOLLOWAY and GALEN concur.