GAY, RESPONDENT, *v.* LAVINA STATE BANK, APPELLANT.

(No. 4,500.)

(Submitted October 29, 1921. Decided December 5, 1921.)

[202 Pac. 753.]

*Hail Insurance—Insurance Broker—Failure to Procure Insurance—Liability for Loss—Appeal and Error—Theory of Case.*

Appeal and Error—Theory of Case.
1. The theory upon which a case was tried in the district court with the acquiescence of the parties is binding upon them on appeal.

Insurance—"Broker"—Definition.
2. An insurance broker, as distinguished from an insurance agent, is one who acts as a middleman between the assured and the insurer, and who solicits insurance from the public under no employment from any special company, and, upon securing an order, either places the insurance with a company selected by the assured, or, in the absence of such selection, with a company selected by the broker.

Same—Broker's Failure to Procure—Liability for Loss.
3. Where a bank acting as an insurance broker, negligently failed to forward a farmer's application for hail insurance to the insurer and plaintiff's crop was destroyed, it was liable to the extent of the loss which would have fallen upon the company had the insurance been effected as contemplated.

*Appeals from District Court, Musselshell County; Geo. P. Jones, Judge.*

ACTION by Charles L. Gay against Lavina State Bank. Judgment for plaintiff and defendant appeals from the judgment and from the order overruling its motion for a new trial. Affirmed.

*Mr. V. D. Dusenbery,* for Appellant, submitted a brief and argued the cause orally.

It is settled that the clerk or subagent of a local insurance agent, while conducting insurance business, is the agent of the insurance company, and his acts are just as binding on the company as though he were duly commissioned. (22 Cyc. 1427–1432; 14 R. C. L. 875; *Continental Ins. Co.* v. *Ruckman,* 127 Ill. 364, 11 Am. St. Rep. 121, 20 N. E. 77; *Steele* v. *Ger-*

*man Ins. Co.*, 93 Mich. 81, 18 L. R. A. 85, 53 N. W. 514;
*Home Ins. Co.* v. *Strange* (Ind. App.), 123 N. E. 127.) Since
defendant was the agent of the Hartford Fire Insurance Company in the insurance transaction, it follows that it could not
become, at the same time, the agent of the plaintiff, for the
proposition is well settled that a party cannot act as agent
for both the insurer and the insured in the same transaction,
without their knowledge and consent. (2 C. J. 712; 14 R. C. L.
876; *J. C. Smith & Wallace Co.* v. *Prussian Nat. Ins. Co.*,
68 N. J. L. 674, 54 Atl. 458; *British-American Assur. Co.* v.
*Cooper*, 6 Colo. App. 25, 40 Pac. 147; *Rockford Ins. Co.* v.
*Winfield*, 57 Kan. 576, 47 Pac. 511; *Mooney* v. *Merriam*, 77
Kan. 305, 94 Pac. 263; *Ramspeck* v. *Pattillo*, 104 Ga. 772, 69
Am. St. Rep. 197, 42 L. R. A. 197, 30 S. E. 962.)

An insurance agent in taking applications for an insurance
company and sending them in to be acted upon by the company,
is the agent of the latter and not the insured. (*Pfiester* v. *Missouri State Life Ins. Co.*, 85 Kan. 97, 116 Pac. 245; *Blake* v.
*Farmers' Mut. L. P. Fire Ins. Co.*, 194 Mich. 589, 161 N. W.
890; *Steele* v. *German Ins. Co.*, 93 Mich. 81, 18 L. R. A. 85,
53 N. W. 514.)

Since the defendant, in taking plaintiff's application for hail
insurance, was agent for the Hartford Company, a disclosed
principal, any agreement that was in fact made was the agreement of the company and not of the agent. (*Criswell* v. *Riley*,
5 Ind. App. 496, 30 N. E. 1101, 32 N. E. 814; *Wallace* v. *Hartford Fire Ins. Co.*, 31 Idaho, 481, 174 Pac. 1009.)

This case must be carefully distinguished from several classes
of cases of somewhat similar character, if confusion is to be
avoided, and we respectfully call the court's attention to three
of such classes. The first class is composed of cases holding
that where the agent of the insurance company makes an
agreement to insure plaintiff's property and then fails to do so,
the company is liable on the agreement to insure. (*McCabe* v.
*Aetna Ins. Co.*, 9 N. D. 19, 47 L. R. A. 641, 81 N. W. 426; *Campbell* v. *American Ins. Co.*, 73 Wis. 100, 40 N. W. 661.) Those

cases are clearly distinguishable from the instant case because the question of dual agency is eliminated. In our case, if the plaintiff were seeking to recover from the Hartford Fire Insurance Company a very different question would be raised.

In the second place, there are a few cases holding that where an insurance agent agrees to procure insurance upon certain property, and through negligence the insurance is not effected, the company, or the agent, or both, are liable in tort. (*Duffie* v. *Bankers' Life Ins. Assn.,* 160 Iowa, 19, 46 L. R. A. (n. s.) 25, 139 N. W. 1087; *Wallace* v. *Hartford Fire Ins. Co.,* 31 Idaho, 481, 174 Pac. 1009; *Boyer* v. *State Farmers' Mut. Hail Ins. Co.,* 86 Kan. 442, Ann. Cas. 1915A, 671, 40 L. R. A. (n. s.) 164, 121 Pac. 329.) We submit to the court that these cases are unsound in principle, for the reason that they unnecessarily confuse the principles of tort and contract. They involve a breach of contract and not the breach of a duty imposed by law. In *Wallace* v. *Hartford,* above, we submit that the dissenting opinion of Judge Rice is more convincing than the majority opinion, because more in accord with settled legal principles. But whether sound or unsound, these cases form no precedent here, because, as we have already pointed out, this case is based upon breach of contract and does not attempt to state a cause of action in tort. To constitute an action in tort, the complaint must have alleged that the defendant negligently failed to do some specific act, and that but for said negligence the property would have been insured and the loss averted. (*Duffie* v. *Bankers' Life Ins. Co.,* above.) In our case there is no allegation that except for some negligence the property would have been insured, and no showing made upon that point.

The third class is composed of those cases in which the defendant is an insurance broker, not representing any insurance company, or not disclosing his principal in the transaction. (*Lindsay* v. *Pettigrew,* 5 S. D. 500, 59 N. W. 726; *Criswell* v. *Riley,* 5 Ind. App. 496, 503, 30 N. E. 1101, 32 N. E. 814; *Rezac* v. *Zima,* 96 Kan. 752, Ann. Cas. 1918B, 1035, 153 Pac.

500; *Russell* v. *O'Connor*, 120 Minn. 66, 139 N. W. 148.) It is apparent that in this class of cases the question of dual agency is eliminated, since either there is no principal, or he is not disclosed in the transaction. In the first case, unless the agent is bound, no one is bound, and in the second case, if the defendant was in fact acting for an undisclosed principal, either may be held liable on the well known principle of agency. But when plaintiff signed the application for insurance he knew that he was dealing with the Hartford Fire Insurance Company, and that the defendant was agent for the latter. Nothing is disclosed in the entire transaction which shows any intent on the part of either party that the defendant should be insurer or that it should become bound in any way in the insurance transaction. It is the responsibility of the companies and not of the agents that is the frequent subject of inquiry among applicants for insurance.

*Messrs. Dillavou & Moore* and *Mr. W. W. Mercer*, for Respondent, submitted a brief; *Mr. H. C. Moore* argued the cause orally.

It is clear that the plaintiff and defendant entered into a contractual relation. The plaintiff had a note at defendant's bank, and he also had an overdraft with the defendant bank. He relied on the promise of the defendant to act for him and to procure hail insurance on his crops. He gave the defendant his note for $100, which the defendant accepted. The rule of law applying to such a case is stated in 22 Cyc. at page 1448. It was held in *Tanenbaum* v. *Rosenthal*, 44 N. Y. App. Div. 431, 60 N. Y. Supp. 1092, that an agent agreeing to procure insurance in specific companies, at specified rates, does not make a contract of insurance, but only a contract to procure insurance and such contract is valid. One of the latest and best expressions of the law holding the agent liable to his principal for failure to procure insurance is found in *Rezac* v. *Zima*, 96 Kan. 752, Ann. Cas. 1918B, 1035, 153 Pac. 500. Many cases can be found which hold that an agent is liable to his prin-

[61 Mont. 449.]

cipal for his failure to procure insurance. They are found collated in the note in Ann. Cas. 1918B, at page 1038.

In an action against an agent to recover damages for a breach of contract to insure the principal's property, the measure of damages in case of the destruction of the property is the value thereof, up to the amount for which it was agreed that insurance should be procured. (*Morris* v. *Summerl*, 2 Wash. C. C. 203, 17 Fed. Cas. No. 9837; *Alabama Red Cedar Co.* v. *Tennessee Valley Bank*, 200 Ala. 622, 76 South. 980; *Criswell* v. *Riley*, 5 Ind. App. 496, 30 N. E. 1101, 32 N. E. 814; *Everett* v. *O'Leary*, 90 Minn. 154, 95 N. W. 901; *Lindsay* v. *Pettigrew*, 5 S. D. 500, 59 N. W. 726; note, Ann. Cas. 1918B, pp. 1040, 1041.)

MR. JUSTICE GALEN delivered the opinion of the court.

In this case it appears that the defendant at all of the times mentioned was a banking corporation organized under the laws of the state of Montana, conducting a banking business at Lavina, Montana. In connection with its business, it was engaged in the writing of hail insurance for the Hartford Fire Insurance Company of Hartford, Connecticut, and other companies, for the accommodation of customers. A. C. Bayers, who was vice-president of the defendant bank, was the local insurance agent of the Hartford Insurance Company at Lavina, but the insurance business was conducted by the bank, and the profits derived therefrom went to the bank, although done in the name of A. C. Bayers, agent. Applications for such insurance were received by any of the officers or agents of the bank, and this method of handling the business was known to and approved by the insurance company. The plaintiff, a farmer owning crops growing in the vicinity of Lavina, on June 1, 1918, visited the defendant bank, and there interviewed William Bargain, one of its bookkeepers, then in charge of the bank, concerning hail insurance covering such crops, and a small overdraft due the bank. Bargain accepted for the bank plaintiff's promissory note for the sum of $20, to cover the plaintiff's

overdraft, amounting to $9.13, and credited the balance of the $20 note to plaintiff's account. At plaintiff's request, Bargain filled out an application for hail insurance, and plaintiff signed the same, such application being made out upon the form provided by the Hartford Fire Insurance Company, and reciting in part as follows: That Charles L. Gay of Broadview postoffice, in the county of Yellowstone, state of Montana, makes application to the Hartford Fire Insurance Company of Hartford, Connecticut, for insurance upon growing crops, consisting of sixty-five acres of wheat at $10 per acre, amount $650, and thirty-five acres of alfalfa at not to exceed $10 per acre, amount $350, against damage by hail for the year 1918, to the amount of $1,000, to be covered by such insurance from the date of the signing of the application to September 15, 1918, at noon, standard time; it being declared in the application that the total number of acres for which insurance was applied for was 100, that the applicant was a tenant of the land described, and that the application was made with specific reference to the "policy stipulations and agreements" attached to the application, and the statements and representations made in the application. The plaintiff executed his promissory note for $100 covering the amount of the insurance premium, and delivered it to Bargain which note is dated at Lavina, Montana, June 1, 1918, payable November 1 after date, to the order of Lavina State Bank, Lavina, Montana. The plaintiff's crops were destroyed by hail on August 20, 1918, and this action was brought by the plaintiff on September 10, 1918, to recover the sum of $1,000 damages on account of the loss of such crops. The action is for breach of contract due to defendant's failure to procure the policy of insurance applied for by the plaintiff.

In defense it was contended, and proof was introduced at the trial to show, that the application for the insurance and the promissory note covering the premium received were received and accepted upon the express understanding and condition that the transaction should meet with the approval of P. A.

Teichroew, cashier of the bank, and that until such time the insurance would not be put in force; that upon the return of Mr. Teichroew to the bank a few days later he refused to accept the note unless it was secured, and that thereupon Mr. Bargain wrote a letter and mailed it to the plaintiff at Broadview, advising that security was required for the insurance premium note before his application would be accepted. Bargain testified that on August 20, 1918, after the destruction of plaintiff's crops by hail, the plaintiff talked with him at Lavina over long-distance telephone from Broadview, and admitted receiving Bargain's letter, but said he thought it could be fixed up later. The plaintiff denied that the note was given or accepted conditionally; denied receipt of the letter from Bargain; or any knowledge that the insurance was not in full force and effect until after the hail storm and telephonic communication had with the defendant bank. The premium note and application for the policy of hail insurance were returned to the plaintiff a day or two subsequent to the hail-storm, having been theretofore pigeon-holed in the bank.

. The case was tried in the district court of Musselshell county, with a jury, and resulted in a verdict and judgment in plaintiff's favor for the sum of $675. The appeal is from the judgment and order overruling defendant's motion for a new trial.

Several alleged errors are assigned as reason for reversal, but in our view but one question is necessary for consideration for complete disposition of the case, presented by motion for a directed verdict, and made defendant's first specification of error; that is, whether the defendant bank may be held in damages for its failure to procure for plaintiff a policy of insurance protecting him from loss or damage to his crops in consequence of hail. As to whether it was an executory or executed contract for insurance constituted a question of fact for the jury, and upon the controverted evidence the jury resolved the issue in favor of the plaintiff. We are bound by the jury's findings in this regard, so that we have before us the application for insurance and promissory note for premium,

both executed by the plaintiff and accepted by the bank, and question arises as to the bank's liability to respond in damages for plaintiff's loss in consequence of the defendant's failure to secure the crop insurance applied for.

The complaint alleges that the contract for breach of which the damages are sought is one by which "the defendant undertook and agreed to *insure*" the growing crops described; but no contention was made by the defendant in its answer or at the trial that the contract was anything more than one [1] *to procure insurance* on plaintiff's crops. The trial proceeded throughout on the latter theory, evidence being admitted in support thereof without objection, and we will accept the same without further inquiry. The theory upon which a case was tried in the district court with the acquiescence of the parties is binding upon them here. (*Talbott* v. *Butte City W. Co.*, 29 Mont. 17, 73 Pac. 1111; *Hendrickson* v. *Wallace*, 29 Mont. 504, 75 Pac. 355; *Mares* v. *Dillon*, 30 Mont. 117, 75 Pac. 963; *Cohen* v. *Clark*, 44 Mont. 151, 119 Pac. 775; *Raiche* v. *Morrison*, 47 Mont. 127, 130 Pac. 1074; *Moss* v. *Goodhart*, 47 Mont. 257, 131 Pac. 1071; *Nilson* v. *City of Kalispell*, 47 Mont. 416, 132 Pac. 1133; *Farwell* v. *Farwell*, 47 Mont. 574, Ann. Cas. 1915C, 78, 133 Pac. 958; *Wallace* v. *Weaver*, 47 Mont. 437, 133 Pac. 1099; *Mosher* v. *Sutton's N. T. Co.*, 48 Mont. 137, 137 Pac. 534; *Roberts* v. *Sinnott*, 55 Mont. 369, 177 Pac. 252; *Babcock* v. *Engel*, 58 Mont. 597, 194 Pac. 137; *Hoskins* v. *Scottish U. & N. Ins. Co.*, 59 Mont. 50, 195 Pac. 837.) No question was raised by the pleadings or otherwise as to whether the contract of the defendant bank was *ultra vires*, so that subject is passed without consideration, and no opinion is expressed thereon.

The action is one founded on contract rather than tort, and [2, 3] from the facts stated, it appears that the defendant bank was acting as an insurance broker rather than as an insurance agent. It was applied to by the plaintiff for hail insurance, and it accepted and received an application for such insurance with the Hartford Fire Insurance Company,

[61 Mont. 449.]

whose agent at Lavina was A. C. Bayers, vice-president of the defendant bank. It was in position to accept and receive applications for hail insurance with other companies, but as no company was specially designated by the plaintiff, his application was by the defendant bank made to the Hartford Fire Insurance Company. This clearly brings the defendant within the definition of an insurance broker, as follows: "An insurance broker is one who acts as a middleman between the assured and the insurer, and who solicits insurance from the public under no employment from any special company, but, having secured an order, he either places the insurance with a company selected by the assured, or, in the absence of any selection by him, then with a company selected by such broker." (14 R. C. L. 868; 9 C. J. 509.)

Every broker is in a sense an agent, but every agent is not a broker. The chief feature which distinguishes a broker from other classes of agents is that he is an intermediary, or middleman, and, in accepting applications for insurance, acts in a certain sense as the agent of both parties to the transaction. Another distinction is that the idea of exclusiveness enters into an employment of agency, while in respect to a broker there is a holding out of oneself generally for employment in securing insurance. (9 C. J. 510, 511.)

"An agent who takes his principal's money under an express agreement to procure insurance, and unjustifiably fails to secure the same or make an effort in that direction, thereby assumes the risk and becomes liable, in case of loss, to pay as much of the same as would have been covered by the insurance policy for which his principal had paid, provided the same had been procured as directed." (*Lindsay* v. *Pettigrew*, 5 S. D. 500, 59 N. W. 726.)

In the case of *Rezac* v. *Zima*, 96 Kan. 752, Ann. Cas. 1918B, 1035, 153 Pac. 500, Mr. Chief Justice Johnston, speaking for the court, stated the correct rule as follows: "Brokers are equally liable where they undertake to procure insurance and utterly neglect to obtain any insurance or fail to carry out

material provisions of their agreement and a loss results. In such a case they are liable for as much as would have been covered by the insurance which they agreed to procure''— citing *Milliken* v. *Woodward,* 64 N. J. L. 444, 45 Atl. 796; *Lindsay* v. *Pettigrew,* 5 S. D. 500, 59 N. W. 726; *Sawyer* v. *Mayhew,* 51 Me. 398; *Diamond* v. *Duncan* (Tex. Civ. App.), 138 S. W. 429; *Mallery* v. *Frye,* 21 App. D. C. 105; *Criswell* v. *Riley,* 5 Ind. App. 496, 503, 30 N. E. 1101, 32 N. E. 814; *Backus* v. *Ames,* 79 Minn. 145, 81 N. W. 766; *Kaw Brick Co.* v. *Hogsett,* 73 Mo. App. 432; note, 38 L. R. A. (n. s.) 631.

And as between the insured and his own agent or broker authorized by him to procure insurance there is the usual obligation on the part of the latter to carry out the instructions given him and faithfully discharge the trust reposed in him, and he may become liable in damages for breach of duty. If he is instructed to procure specific insurance and fails to do so, he is liable to his principal for the damage suffered by reason of the want of such insurance. The liability of the agent with respect to the loss is that which would have fallen upon the company had the insurance been effected as contemplated. Negligence on the part of the agent defeating in whole or in part the insurance which he is directed to secure will render him liable to his principal for the resulting loss. (22 Cyc. 1448, 9.)

The only case which has been called to our attention, presenting facts almost identical with the case before us is that of *Mayhew* v. *Glazier,* 68 Colo. 350, 189 Pac. 843, wherein Mr. Justice Allen, for the court, used language from which we quote with approval as particularly applicable to the case before us, as follows: " * * * It may be assumed that the plaintiff understood that Mayhew was an agent for an insurance company, but that fact tends to prove, rather than to disprove, the existence of an agreement, such as that alleged in the complaint, between the plaintiff and the defendant Mayhew in his individual capacity. If the plaintiff be-

lieved that Mayhew was an insurance agent, he would naturally believe that such agent could cause a policy to be issued, and, if desiring insurance, might give to such agent an application for insurance. Such was the situation between the plaintiff and the defendant Mayhew. The plaintiff desired hail insurance, effective at the earliest possible moment. He gave the defendant his promissory note, payable to the defendant himself, as payment for the premium, with the understanding that the defendant would cause a policy to be issued without any delay. * * * The contract sued upon, alleged to have been made between the plaintiff and the defendant Mayhew, did not conflict with any duty Mayhew owed to the insurance company. Mayhew was the agent of the insurance company for the purpose of soliciting applications for hail insurance, but had no authority to issue policies. * * * The contract made between the plaintiff and the defendant Mayhew was not against the interests of the insurance company. It did not call for the issuance of a policy different from the policies usually issued. It did not deprive the company of any premium due it. Mayhew took the note of plaintiff to himself. * * * Whatever duty he owed to the company, it did not preclude him from acting as the agent for the insured in the matter of causing a policy to be issued, and in the matter of immediately forwarding plaintiff's application for insurance to the company or to some agent authorized to receive and approve such application. This case falls within the rule, stated in 22 Cyc. 1445, that 'the same person may act for different purposes as agent of the different parties to the contract, so that for one purpose he may be the agent of the insured, although as to the procuring of the insurance he also represents the company.' As above indicated, we find that the alleged contract, upon which the plaintiff brought this action, was one made by the defendant Mayhew in his individual capacity, and not as the agent of the insurance company, and that such contract is valid.''

From the record presented on this appeal, the defendant cannot escape liability, and the judgment and order are affirmed.

*Affirmed.*

ASSOCIATE JUSTICES REYNOLDS, COOPER and HOLLOWAY concur.

MR. CHIEF JUSTICE BRANTLY: Upon the theory that the defendant in this case, a banking corporation, could lawfully conduct an insurance business, there is no objection to be made to the conclusion reached by my associates. Since, however, the defendant is a banking corporation, and in my opinion is presumptively not authorized by its charter to enter into contracts, either of insurance or to procure insurance, the contract upon which recovery is upheld in this case is *prima facie* invalid. This question seems not to have been agitated in the trial court, nor has it been presented by appellant in this court. I therefore concur in the affirmance of the judgment and order, but in doing so desire not to be understood as assenting to any implication that may be drawn from the opinion to the contrary, in any case in which the question may hereafter be presented.