DWAIN McKEVITT, Plaintiff and Appellant, v. RONALD
J. MUNGER, d/b a Beaverhead-Madison Agency, and U. S.
Fidelity and Guaranty Company, a Maryland Corporation,
Defendants and Respondents.

No. 12019.
Decided Nov. 12, 1971.
490 P.2d 1050.

252

McCaffery & Peterson, Butte, John L. Peterson (argued), Butte, for appellant.

Corette, Smith & Dean, Butte, R. D. Corette (argued), Butte, Poore, McKenzie & Roth, Butte, James A. Poore, Jr. (argued), Butte, for respondents.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment entered by the district court of the fifth judicial district, Beaverhead County. Judgment was entered upon findings of fact and conclusions of law.

The pertinent facts are: On April 15, 1969 plaintiff, Dwain McKevitt, received a solicitation form from the United States Forest Service requesting bids on a brush clearing job on national forest land, such bids to be submitted by 2 p.m., Monday, June 9, 1969 in Dillon, Montana. Plaintiff's home and business address is Wisdom, Montana, some 70 miles from Dillon.

Sometime in the latter part of April or the first of May 1969, at a bowling alley presumably in Dillon, plaintiff inquired of defendant Ronald Munger: In the event he, plaintiff, bid on the brush job, would Munger, an insurance agent and broker, be able to provide the required bond necessary to be submitted with the bid? Munger replied "he assumed he could". Munger was a general insurance agent and broker and had no authority to issue such a bond, but placed it with a bonding company represented by him. This fact was known to plaintiff and his bookkeeper wife, Irene McKevitt.

The bowling alley conversation between plaintiff and Munger was the last conversation between them, until after the bids were opened on June 9, 1969.

Sometime in the latter part of May 1969, Irene McKevitt, plaintiff's wife and office bookkeeper, was in the office of Munger on other business. At that time she mentioned the need for a bid bond "if he [McKevitt] decided to bid". Munger advised Mrs. McKevitt a current financial statement would be required.

McKevitts' accountant was one R. W. Wagner, a Dillon CPA. There is some evidence that Wagner would provide the necessary current financial information, but neither plaintiff nor his wife made any specific arrangements for the financial statement. The conversation between Irene McKevitt and Munger at that time was the last conversation either McKevitt had with Munger, until after the bids were opened on June 9, 1969.

Sometime between June 2 and the afternoon of June 4, 1969, plaintiff decided to bid on the project and completed the proper forms, including two forms for bid bonds which he executed in blank. The bid was $18,306.50. The bid was placed in an envelope addressed to Munger with a note enclosed. The note read:

"To: Ron. 6/4/69. Please fill out the bid for bond and fix the envelope as instructed and would you please see that this reaches the Forest Service Office before noon, Monday—June 9th—it must be in before 2 p.m. Many thanks—Irene."
No financial statement was in the packet.

The packet containing the bid was handed to one Ron Jensen, driver of a beer truck from Dillon which was in Wisdom on that day. Jensen was told to deliver the packet to Munger in Dillon. He took the packet to Dillon on the afternoon of June 4 but did not deliver it; instead, Munger's office was called by the office staff of Jensen's employer and a message left to the effect that an envelope from Wisdom for Mr. Munger was in that office. The following day, June 5, Munger picked up the McKevitt packet, but did not open it until Friday morning, June 6.

On Friday morning, June 6, three days before the bid deadline, two of which were nonworking days for the defendant United States Fidelity and Guaranty Company [hereinafter referred to as U.S.F.&G.], Munger started his attempts to secure the bond. Because McKevitts had failed to furnish the needed financial statement, Munger and an office employe of R. W. Wagner, the Dillon CPA, attempted to assemble the financial information, required by underwriters. Attempts to contact the

U.S.F.&G. bond underwriter on June 6 were unsuccessful. However, a U.S.F.&G. secretary in Helena, after consulting Eugene Thirsk, the U.S.F.&G. underwriter, by telephone advised Munger to forward the financial statement to Helena. The evidence is conflicting as to what material Munger sent to Helena. The financial statement was sent, but McKevitt's signature thereon was inserted by Munger or someone in his office, to facilitate the matter.

Monday morning June 9, U.S.F.&G. advised Munger by telephone that it could not issue the requested bond because of the time required to check out the McKevitt financial statement and requested Munger to so inform McKevitt. Munger was unsuccessful in his efforts to contact McKevitt. He did try to have the bid opening postponed but was unsuccessful. The McKevitt bid was never delivered to the United States Forest Service. The project was awarded to another bidder. Had the McKevitt bid, in fact, been submitted, it would have been the low bid, although this would not have necessarily meant that McKevitt would have been awarded the contract, because of other considerations.

Plaintiff brought suit against Munger and the U.S.F.&G. alleging negligence in failing to obtain and present to the Forest Service a bid bond and resulting damages to him.

Two separate defendants appear, but for the purposes of this opinion their positions will be treated as one even though there are obvious differences. Also, certain procedural deficiencies appear, but they will not be discussed since on the merits the issues are clearly against appellant.

The trial court found that plaintiff's own negligence through commission and omission proximately caused:

(1) Failure to obtain the requested bond.

(2) Failure to have the low bid timely submitted.

(3) Damages, if any, which he may have sustained.

The trial court found plaintiff's specific negligence to be:

(a) His failure to timely apply for the requested bond when he knew the agent lacked authority to issue such a bond and that

the bond would have to be obtained in Helena, 120 miles from the business office of defendant Munger.

(b) His knowledge of his need for a current financial statement, a fact which he knew at least a week before he decided to bid, and his failure to provide such statement or make any effective arrangements for its provision.

(c) The manner in which he chose to submit his bid and make application for the bond, e.g.—sending a bid amounting to almost $20,000 in an ordinary envelope, via a tradesman, with no particular admonition that it was an urgent matter. Also, no alert was given Munger that the application was enroute and time was short.

(d) Plaintiff was negligent in placing Munger in a position which, under all of the circumstances, made it impossible for Munger to perform. The very earliest that Munger could have acted was approximately 2½ working days before the bid deadline; Munger's only possible bond underwriter was unavailable and would not be available until the morning of the 2 p.m. bid opening day.

Evidence established that under circumstances created almost entirely by plaintiff, there was no way defendant Munger could have provided the bond and delivered the bid in plaintiff's behalf before the deadline.

The trial court further stated:

"Even if there were some theory on which to assess the Defendants, or either of them, with damages or some breach of duty, there is proof before the Court of such damages which are not so remote and so speculative in nature as to fail almost every test under the law."

Plaintiff-appellant urges three issues for review:

1. The finding that plaintiff was contributorily negligent and his negligence proximately caused (a) his failure to obtain the required bond; (b) his failure to have his low bid timely submitted and therefore sustained damages, is contrary to the law and the evidence.

256

2. The trial court erred in not finding from the undisputed evidence that the defendants were negligent and such negligence proximately caused the plaintiff damage.

3. The trial court erred in finding that plaintiff's evidence on damage was remote and speculative.

Appellant urges the principles announced by this Court in *Gay v. Lavina State Bank*, 61 Mont. 449, 202 P. 753, as to the duty of a person who is in the business of taking application for insurance. The difficulty with applying the rules in *Gay* is that appellant failed to prove that Munger failed in any duty. In fact, Munger did more than would be expected of the reasonable prudent man under the circumstances.

Appellant seeks to impress numerous duty rules upon defendants Munger and U.S.F.&G., ignoring corresponding duty rules which apply to himself. Among those to be considered are:

1. Duty of designating his location to insure communication of acceptance or rejection, where time was of the essence.

2. Duty of maintaining a current file status as to credit standing in the business community, or in the alternative the duty of allowance for sufficient time to determine such status.

3. Duty of allowing time for the best efforts on the part of Munger and U.S.F.&G. and furnishing of necessary information to secure bond.

4. Duty to make timely application for the requested bond where time was of the essence, regardless of the status of applicant's financial file, acceptability or financial statements.

In this case time was of the essence. Clearly, appellant recognized this when he stated he was "cutting it awfully close." Appellant sought refuge in a prior occurrence where a bid bond was secured, although such event was almost two years in the past. However, ignoring the dissimilarity which is obvious from the facts, appellant relies on a duty of notification resting upon Munger and U.S.F.&G. to inform him of any potential refusal.

There is an undoubted duty resting upon Munger to notify McKevitt after once undertaking to procure the bid bond.

however, from the facts in evidence at trial it was clearly evident that Munger made every attempt possible to reach McKevitt and also attempted to have the bid opening postponed.

Munger carried out his duty. He attempted to contact McKevitt by telephone on several occasions to advise him that U.S.F.&G. would not issue the bond; he attempted to postpone the bid letting to give McKevitt time to get a bond elsewhere or to obtain some other form of security to support submission of his bid.

Appellant was at fault in that he did not designate a location at which he could be reached or a point at which communication could be had with him.

Inasmuch as appellant has strenuously urged this Court to recognize an absolute duty on the part of Munger and U.S.F.&G. to notify McKevitt of the bond rejection, there is a corresponding duty resting upon McKevitt to place himself at a location known to Munger or U.S.F.&G.

As the evidence and testimony at trial reveal, communication was attempted but failed due to the absence of McKevitt from any known place or designated place.

Surely, this must be a situation that approaches the ludicrous. In a century that has been labeled the "Age of Communication", plaintiff sends a "time is of the essence" bid bond solicitation on an Odyssy beginning with a beer truck and then imparts negligence to the individual who made a Trojan effort on appellant's behalf by employing the most modern means of communication.

Finding no error, we affirm.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES DALY, HASWELL and JOHN C. HARRISON, concur.