No. 82-326

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

_____

JAMES LEROY LEE,

        Plaintiff, Respondent and Cross-appellant,

  -vs-

JAMES R. ANDREWS,

        Defendant and Appellant.

_____

Appeal from: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable James B. Wheelis, Judge presiding.

Counsel of Record:

    For Appellant:

        Worden, Thane & Haines; Ronald Bender argued,
Missoula, Montana

    For Respondent:

        Garlington, Lohn & Robinson; Sherman Lohn argued,
Missoula, Montana
Paul Meismer argued, Missoula, Montana

Submitted:   April 25, 1983

Decided:   July 5, 1983

Filed:   JUL 5 1983

                *Ethel M. Harrison*

_____
Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

After entering judgment for defendant, Andrews, upon a special jury verdict, the District Court of the Fourth Judicial District, Missoula County, granted plaintiff Lee's motion for new trial. Andrews appeals from the new trial order, and Lee cross-appeals, claiming the District Court should have directed verdict or entered judgment notwithstanding the verdict for him.

Plaintiff, James Lee, and defendant, James Andrews, had been friends for over ten years. They were neighbors, played golf together, and saw each other frequently. Over the years, they had been involved in several minor business deals.

Andrews is an insurance agent, and has worked for State Farm Insurance Company for about twenty-one years. Lee had purchased automobile insurance from Andrews in the 1960's, but had let many of these policies lapse after six months. In 1977, Lee had two fire insurance policies and one life insurance policy purchased through Andrews. The controversy here is based upon Lee's claim that Andrews breached an oral agreement to procure car insurance.

On September 28, 1977, Lee was driving his Oldsmobile Toronado and collided with a motorcycle driven by Earl Wilson. Wilson brought suit against Lee and obtained a judgment of about $152,000.

Meanwhile, Lee had requested State Farm to represent him in the action brought by Wilson. State Farm refused and brought a declaratory judgment action in federal District Court, claiming it had no obligation to defend Lee or pay damages in the Wilson action. After a jury trial, the federal District Court concluded that State Farm had no obligation toward Lee.

On September 27, 1979, Lee filed a complaint in the state District Court, against Andrews, alleging breach of an oral contract, tort, and general promissory estoppel. On February 16, 1982, a pre-trial order was filed reducing the claim to breach of contract.

Lee claims that an oral contract to procure insurance arose

from the following circumstances.

In early June 1977, Lee negotiated with car dealer, Michael Dolce, for the lease of an Oldsmobile Toronado. Dolce told Lee he would need insurance and Lee told Dolce to call Andrews' Insurance Agency. Lee testified that he had told Andrews he was going to lease a car and would need insurance. According to Lee, Andrews had replied that he "would take care of it." They did not discuss the amount of coverage, the terms of the policy, the amount of the premium, or the names of the insureds.

Dolce testified that before delivery of a vehicle financed through GMAC, he was required to complete an insurance verification form and verify that the information given him by his prospective customer was correct.

On June 15, 1977, Dolce called Andrews' office and talked with Mrs. Andrews to verify the insurance coverage. Based on the information received from Mrs. Andrews, Dolce completed the insurance verification form. He wrote in policy limits of $100,000/$300,000 for bodily injury, and $25,000 for property damage. He testified that Mrs. Andrews told him "it would be taken care of."

Mrs. Andrews admitted receiving the call from Dolce. She made a note that Lee wanted automobile insurance, listing the year, make, model, and serial number of the car. Although she normally handled car insurance herself, she placed the note on her husband's desk because she realized that Lee's insurance would not be handled in the ordinary manner. She also testified that she assumed Lee would come into their office and complete insurance application forms.

Barbara Sharp, an agent for GMAC, wrote "confirmed 6/20" on the insurance verification form completed by Dolce. Although she did not recall the particular conversation, Barbara Sharp testified that she would not have written "confirmed" on the form had she not called Andrews' Insurance and confirmed insurance coverage on the leased vehicle.

While Lee and Andrews saw and spoke to each other many times over the next few months, Lee never completed an insurance application form nor paid any premium.

Based on the above evidence, the jury returned a special verdict form with the following findings:

1. Did Jim Lee request insurance for the 1977 Oldsmobile Toronado from Jim Andrews? ANSWER: Yes 8, No 4

2. Did Jim Andrews agree to procure insurance for Jim Lee? ANSWER: Yes 9, No 3

3. Was there sufficient information regarding Lee's insurance needs so that Jim Andrews could have, using reasonable care and skill in making inquiries and assembling information, obtained the details necessary to carry any agreement. ANSWER: Yes 9, No 3

4. Did Jim Andrews fail to exercise ordinary care and reasonable diligence in procuring the insurance? ANSWER: Yes 8, No 4

5. Did Jim Lee, by any failure of cooperation, or by his actions or inactions, prevent Jim Andrews from procuring the insurance? ANSWER: Yes 12, No 0

6. Did Jim Andrews fail to procure insurance for the Toronado as he agreed? ANSWER: Yes 8, No 4

7. Did Jim Andrews receive any consideration from Lee for undertaking to provide such insurance coverage? ANSWER: Yes 8, No 4

In findings 8 - 12, the jury found that Lee and Andrews had not agreed on the specific terms of the contract, such as, the amount of insurance, who would be insured, and who would be responsible for the premiums. While the jury found that Lee believed he had insurance, the jury also found that this belief was unreasonable. The jury then awarded Lee $80,150 in damages.

Several weeks after the verdict, and after discussion with counsel for both parties, the District Court entered judgment for Andrews. Lee filed several post-trial motions, seeking in the alternative, judgment notwithstanding the verdict, amendment of the judgment, or a new trial. The District Court granted Lee's motion for new trial, and didn't discuss the motions for amended judgment and judgment notwithstanding the verdict. The District Court granted a new trial on the grounds that

- 4 -

Lee had been denied his right to a fair trial. Lee had the right to choose his form of action and had chosen to pursue solely the breach of contract action. Court's instruction 10 described the duty of an agent or broker in terms of negligence, not contract. The District Court reasoned that the jury was obviously confused because it didn't grant the total amount of uncontradicted damages introduced into evidence. By apportioning damages, the jury seemingly applied comparative negligence principles. Lee was thereby denied his right to a fair trial and a new trial was granted.

Lee on cross-appeal argues that the District Court erred by not granting him a directed verdict or judgment notwithstanding the verdict. He argues that there is no evidence to support the jury finding that Lee prevented Andrews from procuring insurance. (Finding #5) Absent this finding, Lee claims that the verdict supports a judgment for him. (See, in particular, findings #2 and #3) We agree with Lee's contention.

There is no evidence in the record to support the jury's finding that Lee prevented Andrews from procuring the insurance. Applying the doctrine of collateral estoppel from the findings in State Farm's federal action, the District Court sustained objections to any testimony indicating that Andrews had told Lee to come into his office and complete an application. In fact, the only evidence on this point was Lee's own testimony denying that Andrews told him he would have to come into the office and complete an application.

Excluding the finding that Lee prevented Andrews from procuring insurance, the remaining findings support judgment for Lee. We therefore order that Lee be granted judgment notwithstanding the verdict, and remand for a new trial on the issue of damages only.

Andrews argues that on remand this Court should limit the evidence of damages to the limits of the alleged insurance policy. Lee, on the other hand, argues that damages should be

limited only by the operation of section 27-1-311, MCA, which provides that the measure of damages for breach of contract "is the amount which will compensate the party aggrieved for all the detriment which was proximately caused thereby or in the ordinary course of things would be likely to result therefrom."

In Gay v. Lavina State Bank (1921), 61 Mont. 449, 202 P. 753, this Court stated:

> "And as between the insured and his own agent or broker authorized by him to procure insurance there is the usual obligation on the part of the latter to carry out the instructions given him and faithfully discharge the trust reposed in him, and he may become liable in damages for breach of duty. <u>If he is instructed to procure specific insurance and fails to do so, he is liable to his principal for the damage suffered by reason of the want of such insurance. The liability of the agent with respect to the loss is that which would have fallen upon the company had the insurance been effected as contemplated. . . .</u>" 202 P. at 755. (emphasis added)

Andrews is therefore possibly liable for all damages State Farm would have paid. State Farm would have been responsible for the defense of Lee in Wilson's suit against him, and responsible for the damages awarded in that action to the amount of its policy. Further, had State Farm completed these obligations, Lee would not have had to borrow money at 20 percent interest. Under Gay, then, damages from the Wilson judgment, attorneys fees in that action, and the damages resulting from having to borrow money at 20 percent interest are all proper evidence of damages.

We remand for entry of judgment notwithstanding the verdict in favor of Lee, and for a new trial to determine damages.

_____
Justice

We concur:

_____
Chief Justice

_____

John E. Sheely

Frank A. Morrison

Justices

Mr. Justice Fred J. Weber dissents as follows:

The majority opinion overruled the order of the District Court granting the plaintiff's motion for a new trial on all issues and requires the entry of judgment for the plaintiff Lee, with a new trial to be limited to a determination of plaintiff's damages. I respectfully dissent.

In its Opinion and Order granting the new trial, the District Court pointed out that plaintiff initially sought damages on the basis of a breach of an oral contract, tort and general promissory estoppel; but pursuant to the change in contentions on the part of the plaintiff, the plaintiff reduced "his cause of action for trial to the single claim of breach of oral contract." The District Court therefore concluded that the only cause of action on which the plaintiff was entitled to proceed and recover was the breach of an oral contract.

Notwithstanding that limitation of issues, at the request of the defendant, the District Court gave the following instruction No. 10 on negligence to the jury:

> "Negligence on behalf of an agent or broker is the failure to exercise skill, care and diligence of a reasonable and prudent agent or broker under the circumstances."

Upon consideration of the post-trial motions, the District Court concluded that a new trial was necessary. The District Court referred to section 25-11-102(1), MCA, which provides:

> "The former verdict or other decision may be vacated and a new trial granted . . . for any of the following causes materially affecting the substantial rights of such party:
>
> "(1) irregularity in the proceedings of the court . . . or any order of the court . . . by which either party was prevented from having a fair trial;
>
> " . . .

8

"(6) insufficiency of the evidence to justify the verdict or other decision or that is against the law."

In reaching its conclusion that the new trial was warranted the District Court stated:

"This Court grants plaintiff's Motion for a new trial solely on the ground that its giving of defendant's instruction regarding negligence on behalf of an agent or broker as well as allowing into evidence testimony of witnesses directed at demonstrating the defendant's exercise of reasonable care improperly interjected negligence concepts; this error resulted in jury confusion which prevented plaintiff from having a fair trial and is inconsistent with substantial justice. M.C.A. §25-11-102(1) (1981); Mont. R. Civ. P. 61. For these reasons, this Court will neither consider nor discuss plaintiff's argument that there is insufficient evidence to support the findings of the jury."

Having concluded that there was such an irregularity, the District Court then addressed the issue of whether the irregularity materially affected the plaintiff's substantial rights by depriving him of a fair trial. Rasmussen v. Siebert (1969), 153 Mont. 286, 456 P.2d 835. The District Court analyzed the instructions, including the above instruction No. 10 and the conclusions on the part of the jury as to the damages to be awarded, and concluded that the jury was confused by the negligence instruction and erroneously applied negligence concepts and comparative negligence principles. In conclusion the District Court stated:

"The giving of the negligence instruction materially affected a substantial right of the plaintiff and this court's refusal to reject the instruction was inconsistent with substantial justice. MCA, §25-11-102(1), (1981)."

The District Court has set forth a comprehensive analysis of the problems and of its conclusions upon which the award of a new trial was based.

The standard which is to be applied by this Court in reviewing that order granting a new trial is of long standing

9

and is set forth in Moen v. Peter Kiewit & Sons' Co. (1982), _____ Mont. _____, 655 P.2d 482, 487, 39 St.Rep. 2209, 2215 as follows:

> ". . . This decades-old standard has been fleshed out by caselaw establishing that the decision to grant or deny a new trial is within the sound discretion of the trial court, Fredericksen v. Fredericksen (1980), Mont. 605 P.2d 1135, 1137 37 St.Rep. 191, 193, and will not be overturned absent a showing of a manifest abuse of that discretion. Giles v. Flint Val Forest Products (1979), 179 Mont. 382, 588 P.2d 535, 538, 36 St.Rep. 23, 26."

The majority opinion has not set forth any showing which can be construed as a "manifest abuse of discretion" by the trial court.

In addition, I agree with the analysis of the District Court in concluding that the negligence instruction No. 10 was of necessity confusing to the jury. The special verdict form cited in the majority opinion was also confusing. Verdict question No. 4 stated:

> "Did Jim Andrews [defendant] fail to exercise ordinary care and reasonable diligence in procuring the insurance?
>
> Answer: Yes-8, No-4"

That question injected a negligence standard rather than a standard relating to the breach of oral contract.

Finding ample facts and law to sustain the order, and in the absence of any showing of manifest abuse of discretion, I would affirm the order granting new trial.

_____
Justice

10

Mr. Chief Justice Frank I. Haswell, dissenting:

I concur in the foregoing dissent of Mr. Justice Weber. I would add that the jury was arguably confused by Instruction No. 10 and the special interrogatories. The District Court so found, and there is no abuse of discretion in granting a new trial under such circumstances.

On retrial, plaintiff's damages should not be limited to the liability limits of the supposed policy. Montana law provides that the measure of damages for breach of contract "is the amount which will compensate the party aggrieved for all the detriment which was proximately caused thereby or in the ordinary course of things would be likely to result therefrom." Section 27-1-311, MCA.

_____
Chief Justice


Mr. Justice Daniel J. Shea dissents and will file a written dissent later.