Rosa Lee ZACHARY, Respondent,

v.

KROGER, INC., Appellant.

No. 23052.

Kansas City Court of Appeals.

Missouri.

Feb. 1, 1960.

Joseph R. Hogsett, Hogsett, Houts, James, Randall & Hogsett, Kansas City, for appellant.

Paul Scott Kelly, Jr., Kansas City, for respondent.

BROADDUS, Judge.

This is an action for damages for personal injuries. Plaintiff recovered a verdict and judgment for $3,750, and defendant has appealed.

On October 20, 1957, plaintiff went with her daughter to defendant's store located in Independence, Missouri. The store faces south with doors on the east and west sides near the south end. They entered the east door, and the daughter got a push-cart. They then went down the first aisle on the east side of the store toward the meat counter, which was at the rear of the store. They walked along the meat counter to the north-south aisle where they started toward the front of the store where the bread counter was located. When plaintiff reached the front of the bread counter she turned left, took one or two steps, and her left foot flew out from under her and she fell to the floor. When she started to get up she saw "some splattered stuff" on the floor. Also upon the floor was a cardboard box and some broken glass. The box and the glass were right up next to the end of the counter. There was no broken glass in the liquid itself. The glass was in a pile up against the end of the counter. The green liquid was about one foot south of the box and two feet south of the counter. The green liquid was smeared up to the box and the broken glass. Plaintiff remained on the floor two to five minutes before getting up. After plaintiff got up she saw a boy carrying a mop coming down the same aisle plaintiff had just come down. The boy had an apron on. When plaintiff saw him he was over half-way up the aisle coming toward her, and he walked up to the green liquid and mopped it up. The green liquid was not easy to see. The floor was clean except for this spot.

Plaintiff's daughter testified that right at the end of the bread counter was a cardboard box, and right next to it was a pile of clear glass, and there were splatters and streaks leading up to the box and to the glass from the main bulk of the green liquid. After she helped her mother up, she saw a boy coming down the same aisle they had come down and he "proceeded right down the aisle and set his mop right down in this liquid and started mopping it up."

Defendant's store manager testified that the metal door at the rear of the store, which is shown in Plaintiff's Exhibit 1 (a photograph of the interior of the store), leads into a storeroom where defendant's equipment is kept.

No claim is made that the verdict is excessive. Thus we need not set out the evidence relating to the extent of plaintiff's injuries.

Defendant's first contention is that the court erred in overruling its motion for a directed verdict at the close of all the evidence, because there was no evidence from which the jury could find that defendant had knowledge, actual or constructive, of the alleged dangerous condition.

The rule is settled in this state that in ruling on a defendant's motion for a directed verdict such motion admits as true every fact and circumstance which plaintiff's evidence tends to prove; that plaintiff is entitled to the benefit of every inference of fact which may reasonably be drawn therefrom; that the evidence must be considered in the light most favorable to the plaintiff; that the defendant's evidence must be disregarded except in so far as it may tend to aid plaintiff's case; and that such motion can be sustained only when the facts in evidence and the legitimate inferences to be drawn therefrom are so strongly against plaintiff as to leave no room for reasonable minds to differ.

A signficant fact is that there was no broken glass in the liquid itself. The glass was in a pile and was, together with the box, up against the end of the counter, and one to two feet from the main body of the liquid. Giving plaintiff the benefit of the favorable inferences reasonably to be drawn from the evidence, the jury could, in our opinion, find that the boy was an employee of defendant and had discovered the presence of the broken bottle of green liquid, had removed the box and broken glass from the liquid and placed them out of the way against the end of the counter, and had gone to the utility room in the rear of the store to get a mop and was returning to mop up the liquid when plaintiff fell. The court committed no error in overruling defendant's motion.

Defendant next contends that Instruction No. 1, which purported to cover the entire case and direct a verdict, is erroneous because it failed to require the jury to find that plaintiff was in the exercise of ordinary care for her own safety. As defendant says, it did not require that finding. At defendant's request the court gave Instruction No. 5. It told the jury "that under the law plaintiff had a duty at all times in question to exercise ordinary care for her own safety * * *. Therefore, if you find and believe from the evidence that at the time plaintiff fell she was not watching the floor where she was walking and was thereby negligent," and that such negligence, if any, directly caused or contributed to cause plaintiff to fall, she could not recover. Plaintiff says that the error contained in Instruction 1 was cured by the giving of Instruction 5. Defendant contends otherwise.

In the case of Moore v. Ready Mixed Concrete Co., 329 S.W.2d 14, loc. cit. 22, 23, by our Supreme Court, En Banc, on November 12, 1959, appears this language:

"It has long been the rule in this state that the failure of plaintiff's verdict-directing instruction (submitting primary negligence) to negative contributory negligence (supported by pleadings and proof) will constitute reversible error. Daniel v. Pryor, Mo. Sup., 227 S.W. 102; Pence v. Kansas City Laundry Service [Co., 332 Mo. 930, 59 S.W.2d 633], supra. However, since 1888, it has been the established rule that the error in failing to include a finding as to contributory negligence in plaintiff's verdict-directing instruction *is cured by the submission of the issue in instructions offered by the defendant.* Owens v. Kansas City, St. J. & C. B. R. Co., 95 Mo. 169, 8 S.W. 350." (Emphasis ours.)

The Moore opinion then proceeds to point out that the Supreme Court's present views are similar to those expressed in the majority opinion in Sullivan v. Hannibal & St. J. R. Co., 88 Mo. 169, which case was improperly overruled in the Owens v. Kansas City, St. J. & C. B. R. Co. case, supra. The Moore opinion then said: "We therefore hold that in cases where the court gives a defendant's instruction submitting his affirmative defense of contributory negligence, it is error to give a verdict-directing instruction for plaintiff which fails to refer to or negative his contributory negligence. Cases to the contrary should no longer be followed."

The court then announced that its ruling should be applied prospectively and hence should have no application to a case submitted in the trial court prior to the publication of said opinion in the advance sheet of the Southwestern Reporter. That took place on December 22, 1959. Since the instant case was submitted to the jury on February 27, 1959, we are compelled to rule the point against defendant.

Defendant also contends that Instruction 1 was broader than the evidence and not supported by the evidence in that there was no evidence "that (1) defendant knew of the presence of the dangerous condition, and (2) if defendant knew of it that defendant had time to warn plaintiff, and (3) if defendant knew of it that defendant had time to cause plaintiff to avoid stepping thereon, and (4) that plaintiff would have avoided stepping thereon." This is essentially the same contention raised by defendant under its Point 1. We have ruled that the evidence was sufficient to support the jury's finding that defendant knew of the presence of the liquid on the floor prior to plaintiff's fall. And the defendant's store manager testifying on cross-examination as to the custom of the store when merchandise is broken or spilled on the floor said: "Immediately the person that sees it or is informed of it, he waits at that particular spot until he gets help there to either guard the merchandise or put a big bascart, two or three bascarts, (pushcarts used by customers) block it off so nobody can fall in it, one or the other, and then proceed to get it cleaned up." The contention lacks merit.

■ Defendant's next point relates to Instruction No. 2, which dealt with the measure of plaintiff's damages. Defendant contends that the instruction allowed the jury to find as a part of plaintiff's damages a loss of earnings when there was no credible evidence that plaintiff sustained any such loss as a result of her injuries. Plaintiff testified that she earned an average of $25 per week from baby sitting and ironing clothes prior to her fall; that she ironed one to three bushels, and up to four bushels of clothes a week, charging $2.50 and $3 per bushel. She testified that on account of the injury to her back she has not taken care of any children since her fall, saying "I wasn't able to lift them and take care of them, any little ones." She also stated that for the "first six months after the accident" she was not able to do any work at all. Thus it is clear that the point is not well taken.

Defendant also contends that the Instruction "gave to the jury a roving commission and allowed speculation in that it allowed the jury to find as a part of plaintiff's damages plaintiff's reasonable medical expenses whereas (1) there was no evidence plaintiff incurred or paid any medical expenses and (2) the expenses testified to by plaintiff's doctor were not separated as to those which would have been incurred as a result of the fall and those which were not due to the fall."

■ Dr. Anderson, who treated plaintiff for her injuries, testified that his bill of $605.50 was "To Mrs. Zachary", and that the same was reasonable. The fact that the bill was paid or unpaid is not material. The important thing being that it was incurred. Cordray v. City of Brookfield, Mo.Sup., 88 S.W.2d 161. Since the evidence discloses that the debt was against plaintiff herself and was one for which she was personally liable the contention lacks merit. Cowgill v. City of St. Joseph, 180 Mo.App. 327, 331, 167 S.W. 1157, 1158.

Plaintiff testified that she never had any trouble with her back prior to the fall in the store. Dr. Anderson testified that, in his opinion, plaintiff's injuries were caused by the fall; and that the arthritic condition which she had previous thereto was aggravated by it. As we read the doctor's testimony all of the medical expenses incurred arose as a direct result of the

fall. Thus part (2) of defendant's contention also lacks merit.

Finding no error in the transcript prejudicial to defendant, the judgment is affirmed.

HUNTER, J., and SAM C. BLAIR, Special Judge, concur.