139 So.2d 476 (1962)
FIRST NATIONAL INSURANCE AGENCY, INC., Appellant,
v.
LEESBURG TRANSFER & STORAGE, INC., Appellee.
No. 2585.
District Court of Appeal of Florida. Second District.
March 28, 1962.
*477 Monroe E. McDonald, Sanders, McEwan, Schwarz & Mims, Orlando, for appellant.
Walter Warren, Leesburg, for appellee.
ALLEN, Acting Chief Judge.
Defendant has appealed from a final judgment in favor of plaintiff in action at law tried before the lower court without a jury. The theory of plaintiff's complaint was that defendant had breached an oral contract to procure and provide additional insurance coverage on plaintiff's building to the resulting detriment of plaintiff when said building was destroyed by fire. The recovery sought was the total amount of additional insurance alleged to have been contracted for.
At all times material, plaintiff's building was insured against fire loss under two separate written insurance contracts for the total amount of $17,000. These policies had been procured by defendant for plaintiff from two out-of-state insurance companies. Plaintiff filed his complaint for defendant's alleged breach of an oral contract to obtain additional insurance for plaintiff in the amount of $17,000, in other words, to double the amount of insurance on plaintiff's building.
In December of 1958, or thereabouts, an alleged discussion took place between plaintiff's president, Fred Duncan, and defendant's general manager, L.A. LeMaster. During this discussion, plaintiff alleged in its complaint that Duncan asked LeMaster *478 to double the existing insurance on plaintiff's building and that LeMaster agreed to do so immediately. The insurance was, however, never thereafter increased. In July of 1959, plaintiff received renewal certificates to reflect the annual renewal of its already existing insurance coverage of $17,000. In November of 1959, the insured premises were completely destroyed by fire and plaintiff alleged that it, for the first time, learned that the insurance had not been doubled as requested. The aforementioned written insurance policies and the renewal certificates issued in July, 1959, were attached to the complaint. Defendant's motion to dismiss the complaint for failure to state a cause of action was denied whereupon defendant answered.
In its answer defendant denied the existence of any agreement to double the insurance. In addition, the answer pleaded, among others, the affirmative defenses of estoppel and failure of consideration. Plaintiff filed a motion to strike the several affirmative defenses on the grounds that either separately or collectively they did not constitute a legal defense to the complaint. The lower court without opinion ordered the affirmative defenses stricken apparently on the grounds proposed in the motion to strike, to-wit: that the defenses raised did not constitute legal defenses to the complaint. Said order did not grant defendant leave to amend its answer, nor did it deny same. Neither did defendant move the court to permit an amendment.
The cause was therefore tried on the issues of the existence vel non of an oral agreement by defendant to provide additional insurance coverage, the breach thereof and the amount of damages recoverable. The only direct testimony going to whether or not such an agreement had been made was elicited from plaintiff's president, Duncan, and defendant's general manager, LeMaster. Duncan testified that at the time of the alleged discussion between himself and LeMaster he had become concerned over increased fire hazards to plaintiff's building which were being caused by plaintiff's tenant. He mentioned to LeMaster that the cost to replace the building would be $35,000 and he instructed LeMaster to therefore double the then existing coverage of $17,000. Duncan further testified that LeMaster said he would take care of it.
LeMaster's testimony was in direct conflict with that of Duncan. Though he recalled discussing insurance matters, many of which are unrelated to the questions involved, with Duncan at frequent intervals during late 1958 and early 1959, he denied any particular recollection of the discussion at which Duncan contended he asked for an increase in coverage. Specifically, LeMaster denied that Duncan ever made such a request of him.
No direct testimony was produced by either side to corroborate respectively the affirmative testimony of Duncan or the negative testimony of LeMaster. Plaintiff's bookkeeper and office manager, Mrs. Sarah Meachen, recalled that Duncan and LeMaster discussed in her presence matters concerning fire hazards and increasing insurance in late 1958. She did not testify that Duncan requested an increase in coverage in her presence but stated that Duncan and LeMaster left her office on the day in question, apparently continuing their discussion outside.
Toward the close of the evidence, the defense offered into evidence as exhibits copies of the two renewal certificates reflecting total coverage of $17,000 which had been issued and received by plaintiff in July, 1959. Copies of the same certificates were attached to the complaint. These exhibits were admitted by the court without objection. Subsequently, the lower court entered final judgment in favor of plaintiff in the amount of $17,000 together with interest and costs. This amount equalled the amount of additional insurance alleged by plaintiff to have been contracted for.
Defendant-appellant's first point on appeal is that the complaint did not state a cause of action and the lower court therefore erred in denying defendant's motion to *479 dismiss. The ultimate facts alleged in plaintiff's complaint are that defendant, a general insurance broker, breached an oral agreement with plaintiff to procure additional insurance on plaintiff's premises with a company or companies for which defendant was authorized to write insurance. Defendant as broker is therefore alleged to have breached its agency agreement with plaintiff as principal.
Reduced to fundamentals, the question before this court under the facts of this case is can an insurance broker, as agent of an insured, be held to respond in damages resulting from its breach of an agreement with the insured to procure insurance. Surprisingly, insofar as an action at law is concerned, the instant case appears, narrowly speaking, to be one of first impression in this state, although the Supreme Court in Collins v. Aetna Ins. Co., 1931, 103 Fla. 848, 138 So. 369, acknowledged that a parol contract to insure could be specifically enforced in equity against a broker. However, the liability of a broker for damages resulting from a failure to provide insurance, having agreed so to do, is elsewhere almost universally recognized. The cause of action was given succinct expression in Gay v. Lavina State Bank, 1921, 61 Mont. 449, 202 P. 753, 755; 18 A.L.R. 1204, as follows:
"And as between the insured and his own agent or broker authorized by him to procure insurance there is the usual obligation on the part of the latter to carry out the instructions given him and faithfully discharge the trust reposed in him, and he may become liable in damages for breach of duty. If he is instructed to procure specific insurance and fails to do so, he is liable to his principal for the damage suffered by reason of the want of such insurance. The liability of the agent with respect to the loss is that which would have fallen upon the company had the insurance been effected as contemplated. Negligence on the part of the agent defeating in whole or in part the insurance which he is directed to secure will render him liable to his principal for the resulting loss. * * *"
The breach of the broker's duty to procure insurance is indicated in the above quotation and has elsewhere been held to sound in negligence as well as in contract. Elam v. Smithdeal Realty & Ins. Co., 1921, 182 N.C. 599, 109 S.E. 632; 18 A.L.R. 1210. In the latter case the trial court nonsuited the plaintiff in his action to recover damages for breach of a contract to procure a policy of insurance protecting plaintiff's automobile against collision damage. The defendant had contracted to provide insurance against various risks including collision. The policy was in fact procured but it was lacking in any collision coverage. A collision occurred, and the plaintiff not being protected against it under the policy brought the action against his broker for failing to provide such protection. The Supreme Court of North Carolina rejected the contention that the policy as issued expressed the contract between the parties and held that said policy did not have "the effect of shutting off prior or contemporaneous parol inducements and assurances in contravention of the written policy." In reversing the nonsuit the court further held that the complaint against the broker for failing to perform a duty he had undertaken stated a cause of action. In so doing the Court also discussed and disposed of other questions which are pertinent to the instant appeal.
On the question of consideration, the Court held that the promise to take a policy was sufficient consideration for the broker's undertaking to carry out his instructions with respect to the policy, thus intimating that the actual payment of premiums or promise to pay them is not essential to the existence of a valid contract to insure. One of the defenses stricken in the instant case was failure of consideration, which will be discussed more fully later.
In the Elam case, supra, there was also evidence that the plaintiff had received the policy in question before the collision occurred *480 and therefore had an opportunity to discover that collision coverage had not been provided. The Court noted that since the theory of the action brought sounded in contract and not tort, any "negligence" on the part of the plaintiff which "contributed" to his injury could properly be considered on the issue of damages. The Court then held that, on the remand of the case, if it appeared that the failure to have an adequate policy was due to plaintiff's own negligent default in not ascertaining the defect in the policy held by him and procuring another, the damages would be nominal.
The matters just discussed relative to plaintiff's conduct and damages will be discussed at greater length infra, however, at this juncture we hold that the complaint in the instant case stated a cause of action and the lower court did not therefore commit error in denying defendant's motion to dismiss. For additional references as to the existence of a right of action against a broker for failure to procure insurance see 16 Appleman, Insurance Law and Practice §§ 8831, 8832; 3 Couch 2d, Insurance § 25:46; Vance on Insurance (3rd ed.) § 36, p. 217; Annot., 81 A.L.R. 1214; and Annot., 29 A.L.R.2d 171.
The defendant next raises the question of the propriety of the lower court's order striking without leave to amend its affirmative defenses, one of which was the defense of estoppel. Plaintiff asserts that defendant cannot here challenge the striking order since it did not move the court for leave to amend. We note, however, that the apparent ground on which the striking order was entered was that the defenses stricken did not constitute legal defenses to the complaint. Such being the case, the seeking of leave to restate defenses already impliedly declared to not constitute legal defenses would appear to have been a futile gesture.
We feel that the defense of estoppel is peculiarly applicable to the facts raised in the complaint and the two renewal certificates attached thereto. Even accepting the allegations and also the testimony of the plaintiff as true, defendant should have been permitted the opportunity to plead and prove if it could that plaintiff impliedly waived its right to performance of any agreement by defendant to double plaintiff's insurance, since for a period of almost one year after the agreement terminating at the time of the fire plaintiff took no action whatsoever to see that the agreement was carried out. Furthermore, for a period of approximately four months after receiving renewal certificates showing that its insurance had not been doubled plaintiff did nothing to so apprise the insurer. Only after its building had burned did plaintiff again pursue the matter of doubled insurance. The reasonableness vel non of such inaction should have been entertained by the lower court as a triable issue. Under the facts of this case, a holding that the defense of estoppel does not lie would be tantamount to a green light for anyone who sustains a fire loss to pursue the enforcement of possibly non-existent insurance contracts. At the same time, we do not in any way mean to impugn the good faith of the plaintiff's claim in the instant case. Indeed, the trial judge as trier of fact found that an oral agreement to double insurance had in fact been made. What we do say, however, is simply that the conduct of insureds, in situations such as we are herewith confronted, is subject to judicial scrutiny when material allegations going to the reasonableness of such conduct are appropriately raised in defense.
The estoppel sought to be raised in this case was the assertion by defendant that plaintiff should be estopped from asserting any claim under an oral agreement to provide additional insurance, being charged with knowledge some seven or eight months after the purported agreement that said agreement had not been carried out and thereafter for a period of four months having failed to attempt to have defendant rectify the breach until after a fire had occurred. Though we do not imply that the terms estoppel and waiver are in every *481 instance synonymous, the particular variety of estoppel herein sought to be invoked amounts as well to an alleged waiver by plaintiff of its right to performance of a contract to insure and thus its right to seek damages for the breach thereof. See generally, Thomas N. Carlton Estate v. Keller, Fla. 1951, 52 So.2d 131; 19 Am.Jur., Estoppel § 36; 12 Fla.Jur., Estoppel and Waiver § 26.
We feel that the defense of estoppel is a legal defense to the complaint in this case and should not have been stricken.
We next consider the legality of the defense of failure of consideration. We feel that such constituted a legal defense to the complaint and hold that it too should not have been stricken. However, we also hold that the mere absence of payment or an express promise to pay premiums will not serve to defeat the contract. As indicated from our discussion of Elam v. Smithdeal Realty & Ins. Co., supra, on the remand of this case the defense of failure of consideration cannot be established unless the defendant also proves that plaintiff had not agreed to accept a policy if issued, carrying with it the implied promise to pay whatever premium would be due thereon.
As to the remaining affirmative defenses of illegality and impossibility of performance which were also stricken below, it is difficult to see from the record before this court on what basis defendant hoped to sustain them. However, they do constitute legal defenses to an action on a contract and therefore should not for that reason have been stricken.
The remaining question to be disposed of by this court is raised as appellant's point four, to-wit:
"As the plaintiff failed to prove any damages, it was improper for the trial court to award damages for more than a nominal sum even if the court had properly found the plaintiff entitled to recover."
This point is raised by assignment of error number seven, to-wit:
"The amount of damages awarded to the plaintiff is unsupported by any competent or substantial evidence."
We shall deal with the question on the basis of the sufficiency of the evidence to support the damages awarded.
The only evidence considered by the lower court as to the amount of damages was Duncan's testimony as to how much insurance he had contracted for on behalf of plaintiff. This amount, $17,000, equaled the damages awarded. The lower court did hear, on a proffer basis only, testimony produced by defendant pertinent to the insurable value of the building destroyed. Defendant also sought to justify the introduction of this testimony on the additional ground that value of the building was relevant to the question of whether or not defendant would ever have agreed to double the insurance as alleged. The lower court deemed this evidence inadmissible and as stated above permitted its introduction on a proffer basis only. Therefore, it cannot have been given any weight in arriving at the damages awarded.
The lower court was apparently of the opinion and it is appellee's position here that the valued policy provisions of § 631.04, F.S.A. now § 627.0801 in conjunction with § 92.23, F.S.A., prevented any consideration being given the insurable value of the building in arriving at the damages sustained by the plaintiff. These provisions read:
"627.0801 Valued policy law.
"(1) In event of total loss by fire or lightning of any building or structure located in this state and insured by an insurer as to such perils, in the absence of any change increasing the risk without the insurer's consent the insurer's liability, if any, under the policy for such total loss shall be in the *482 amount of money for which such property was so insured as specified in the policy and for which premium has been charged and paid." (Emphasis supplied)
"92.23 Rule of evidence in suits on fire policies for loss or damage to building.
"In all suits or proceedings brought upon policies of insurance on buildings against loss or damage by fire, hereafter issued or renewed, the insurer shall not be permitted to deny that the property insured was worth, at the time of insuring it by the policy, the full sum insured therein on such property." (Emphasis supplied)
It is our view that the above two statutory provisions have no application to the instant case which does not involve an action brought on a policy of insurance but is rather an action for damages arising out of the alleged breach of an executory contract to procure insurance with no binder having been given by the defendant.
As a rule, the measure of damages is the amount the plaintiff would have received had the contract been performed. Sullivan v. McMillan, 1890, 26 Fla. 543, 8 So. 450; Poinsetta Dairy Products, Inc. v. Wessel Co., 1936, 123 Fla. 120, 166 So. 306, 104 A.L.R. 216. Stated another way, the damages recoverable on a contract are those which would naturally result from the breach thereof, either as the ordinary consequence of such breach or as a consequence which may under the circumstances be presumed to have been contemplated by the parties to the contract as the probable result of its breach. Poinsetta Dairy Products, Inc. v. Wessel Co., supra; Hadley v. Baxendale, 9 Exch. 341, 23 L.J.Exch. 179, 18 Jur. 358, 5 Eng.Rul.Cas. 502.
Plaintiff's president, Duncan, testified that after telling LeMaster that to replace the building would cost $35,000 he instructed him to double the insurance. LeMaster simply stated, according to Duncan, that he would take care of it. By this statement LeMaster can be said to have agreed to do no more than make the effort to procure as much additional insurance as could be obtained up to but not exceeding $17,000. If the parties can be presumed to have contemplated any consequences of defendant's breach of its promise to perform this act, such consequences can be no more than the amount of insurance that could have been procured had the effort been made. Thus the insurable value of the building prior to the fire becomes material to the question of how much insurance could have been obtained and in turn to the amount of damages recoverable. It may be that the insurable value of the building involved was equal to or in excess of the amount of doubled insurance, $34,000. However, as indicated by its rulings, the lower court gave no consideration to value in arriving at its decision. This failure to consider the evidence relevant to the insurable value of the building was error. Therefore, Duncan's bare statement that he requested $17,000 additional insurance which was accepted by the lower court was insufficient evidence to justify a damage award in that amount.
On an analogous set of facts, where a covenant in a mortgage required the mortgagor to keep the mortgaged property insured in a given amount, the Florida Supreme Court, in Clay v. Girdner, 1931, 103 Fla. 135, 138 So. 490, 494, held that said covenant "should be construed to mean that the mortgagor will procure it if obtainable, and that such covenant is contingent upon the ability to procure the stated amount." (Emphasis supplied.)
As suggested heretofore in this opinion in the discussion pertaining to the validity of the cause of action, had plaintiff's theory of action been grounded on defendant's negligence for failure to procure the insurance in question, plaintiff would have been subject to the defense of contributory negligence going to whether or not its loss resulted *483 from its own inaction in failing to ascertain the extent of its coverage for a period of four months after receiving renewal notices showing that coverage had not been increased. Since, however, the action was brought on a contract, the default, if any on the part of plaintiff in failing to determine the inadequacy of its coverage could instead justifiably result in an award of only nominal damages. See State ex rel. Dresskell v. City of Miami, 1943, 153 Fla. 90, 13 So.2d 707; Elam v. Smithdeal Realty & Ins. Co., supra; 9 Fla. Jur., Damages § 20 and cases cited therein. The distinction between the tort doctrine of contributory negligence and the contract doctrine of avoidable consequences is largely verbal insofar as a plaintiff's conduct is concerned. It has been said that contributory negligence bars the action itself while the doctrine of avoidable consequences, referred to also as a duty to mitigate damages, merely goes to the reduction of damages caused by a defendant. See 9 Fla.Jur., Damages, § 20; and 15 Am.Jur., Damages § 27.
In the instant case it may be shown upon retrial that a failure to inspect its renewal notices, if such be found, would not alone be sufficient inaction on the part of plaintiff to justify the imposition of the doctrine of avoidable consequences. However, if the amount of premiums charged had not been significantly increased on the renewed policies, such would be an indication that plaintiff, at least at the time the renewal premiums were charged or paid, had knowledge that its coverage had not been increased.
It is not apparent from the record that the trial court gave any consideration to those factors before it which might have resulted in a finding that plaintiff by reasonable diligence could have avoided the consequences which resulted from defendant's breach. Under the facts of this case such consideration should have been given and is therefore an additional ground for our holding that the evidence was insufficient to justify the amount of damages awarded.
Under the peculiar facts of this case, such evidence as could have been considered by the lower court pertinent to any failure on the part of plaintiff to pursue available measures of self protection is inextricably interwoven with those matters which would have doubtless been emphasized by the defendant under the broad plea of estoppel had it not been stricken. If the plaintiff's inaction upon receipt of the renewal notices be deemed unjustified, such a finding is applicable to the question of whether an estoppel tantamount to a waiver of plaintiff's rights under its contract with defendant should be invoked as well as to the amount of damages recoverable.
Because of the difficulties attendant to segregating the proofs on the issues herein involved, we feel that the justice of the cause will best be served by permitting a complete retrial of all the issues in this case. On the issue of damages the lower court is instructed to hear and consider evidence pertaining to the insurable value of the building and the question of plaintiff's opportunity, if any, to avoid the damages that befell it. In addition, the lower court is instructed to permit the defendant to plead and attempt to prove its several affirmative defenses previously discussed. If the trial judge is of the opinion that these defenses as presently drawn are technically defective or susceptible to being made more definite and certain, he can, in his discretion, leave them stricken and allow the defendant a reasonable time to amend its answer.
The judgment appealed is reversed and remanded for a new trial on issues now made and on new issues if amendments are filed.
Reversed.
KANNER and WHITE, JJ., concur.