**KAP–PEL FABRICS, INC., Appellant,**

**v.**

**R. B. JONES & SONS, INC., and Edward L. Hoffman, Respondents.**

**No. 24353.**

Kansas City Court of Appeals.
Missouri.

April 4, 1966.

George M. Winger, Thomas I. Gill, Kansas City, Smith, Schwegler & Swartzman, Kansas City, of counsel, for appellant.

William H. Sanders, Dean F. Arnold, David C. Trowbridge, Kansas City, Caldwell, Blackwell, Sanders & Matheny, Kansas City, of counsel, for respondents.

MAUGHMER, Commissioner.

This is a damage suit against an insurance brokerage corporation and its agent based upon an alleged "breach of agreement" and negligence in the procurement of an automobile liability insurance policy. At the close of plaintiff's evidence the court directed a verdict and entered judgment for each defendant. Plaintiff has appealed.

The plaintiff, Kap-Pel Fabrics, Inc., is a corporation engaged in the wholesale dry goods business. The defendant R. B. Jones & Sons, Inc., is a corporation engaged in the "insurance brokerage and agency" business. The defendant Edward L. Hoffman is an agent and employee of Jones. All parties were located, resided and did business in Kansas City, Missouri.

Mr. Samuel Kaplan has been president of Kap-Pel Fabrics since it was organized under that name in about 1947. He testified that he did most of the buying and selling and was out of the office much of the time. He said his associate, Mr. Samuel Peltzie, handled the day to day

operation and "the purchasing of insurance coverage", although the bookkeeper, Dorothy Stepp, "usually took care of the details".

The plaintiff company in the conduct of its business carried numerous kinds of insurance, including workmen's compensation, fire and extended coverage, blanket position bond, performance bond, automobile liability on an Oldsmobile, on a Chrysler, and a policy on nonowned, hired cars. Mr. Kaplan estimated they had "somewhere between five and eight policies". Mr. Peltzie died during the year 1956, and at that time plaintiff had insurance policies with or through the following named insurance agencies or brokers: the defendant Jones, Atlas-Rogovein, T. H. Mastin Company, Altman Brothers, Minkin Agency and Koenigsdorf Agency. After the death of Mr. Peltzie, most of the policies on renewal dates were taken out with defendant Hoffman and through the defendant Jones Agency. Mr. Kaplan estimated that: "By '60 or '61 he was handling at least 90 percent of all of our insurance".

Apparently upon occasions when some of the plaintiff's officers were away from Kansas City, particularly in New York City, they rented automobiles for use temporarily in the company business. To cover company liability on these rented vehicles the plaintiff had purchased through the T. H. Mastin Agency, as "nonowned, hired car coverage policy" for an annual premium of approximately $50. Mastin's last policy of this type expired January 3, 1957. This business was then transferred to defendant Hoffman, agent for Jones, who procured and had issued an exactly similar or comparable policy described as "nonowned, hired car coverage". This policy was written for one year from January 3, 1957 to January 3, 1958. It was twice renewed for a period of one year. Mr. Kaplan made these statements regarding this particular policy, and its transfer from Mastin to Jones. He said he gave the Mastin policy to Dorothy Stepp, office

manager, and said: "Here's a policy that is lapsing and we want to give it to—we want to give this coverage to Ed Hoffman". "I told Ed Hoffman * * *, we want to cover Kap-Pel Fabrics from any chance of liability on a truck that belonged to Joe Howard". He said Hoffman told him "There wasn't anything that would keep us from obtaining it" (referring to liability coverage on Howard's truck) and "indicated we would be covered". He said: "I told Ed Hoffman—that is, I told Ed Hoffman what we were attempting to accomplish with this policy, we wanted to cover Kap-Pel Fabrics from any liability on a truck that belonged to Joe Howard, who was employed by us, but owned his own truck". Kaplan admitted that both the Mastin and Jones policies which we have just referred to, each excluded from coverage "commercial vehicles owned by employees" or hired commercial vehicles that were used more than occasionally, and that these exclusions were printed in plain type on the policies. He said he did not examine or read the Jones policy or either of the renewals and if he had read it, it "would not have been issued". Mr. Kaplan admitted that Hoffman was "given the Mastin policy" when it expired. He was asked if Hoffman was to duplicate that policy. Kaplan answered: "Not necessarily". "I always told Ed to cover us, adequately regardless of prior policies", although he did not have "carte blanche authority". Kaplan knew also that the annual premium on this policy was about $50, the same as on the Mastin policy which it replaced and which covered only nonowned, hired cars.

Defendants' Exhibit 5 was received in evidence. It is a booklet which was prepared by defendant Hoffman and delivered to plaintiff company. It contains Hoffman's recommendations as to various insurance coverages for plaintiff company. On the back of the "nonowned, hired cars" item these notations appear: (1) "Recommend comprehensive coverage" and (2) "Replaced by comprehensive coverage". The specific date of the recommendation

was not proved. The replacement with comprehensive occurred after the Howard accident out of which this lawsuit arose and which we will now discuss.

Mr. Joe Howard began working as a truck driver delivering merchandise for plaintiff in the Kansas City area about 1951, and has been employed in such capacity ever since. This was a full time job. For several years prior to and including January 16, 1959, he made these deliveries in a truck owned by himself. On January 16, 1959, while engaged on company business, he was involved in an automobile accident. Plaintiff company was sued and settled the claim for $1500. It is this amount, plus $1,000 in attorneys' fees and expenses, which it is claimed were reasonably incurred in that litigation, which plaintiff seeks to recover by this action. There is no dispute regarding the reasonableness of this claim except as to the amount of the attorneys' fees.

In the early '50s, Mr. Howard said the company carried liability insurance on his truck. He said he did not know when it stopped this practice. Howard testified he thought Kap-Pel had liability insurance on his truck at the time of the accident. Kaplan testified that he "assumed" Howard had liability insurance at the time of the accident. In any event, neither had any such insurance at the time. It appears that for a time Howard had carried liability insurance but after being involved in an accident his insurance was canceled. He bought no liability coverage thereafter.

Gerald Zobel, treasurer of plaintiff company, testified that after the Howard accident, the defendant Hoffman came to the plaintiff's office and after a discussion of the accident, said: "I will take care of it". He said that on a later visit Hoffman first told them "We were not covered".

On appeal plaintiff contends that it was error to sustain defendants' motions for directed verdicts and enter judgments thereon because: first, it says there is submissible evidence that plaintiff entered into a contract with defendants which was breached, and, second, a submissible case of negligence was established against both defendants for their failure to procure the insurance contracted for. Defendants assert the evidence fails to establish any valid contract to secure liability insurance on the Howard truck, fails to show defendants were guilty of negligence, contributing to plaintiff's damages, and shows affirmatively that plaintiff kept the insurance policy which was submitted to it for more than two years and beyond two renewals, and is therefore estopped to assert it was not the contract purchased, and was guilty of contributory negligence in failing to complain earlier.

There are only two grounds upon which the directed verdicts properly could have been granted: (1) if there was no substantial evidence of the contract to procure, or (2) if plaintiff's conduct constitutes, as a matter of law, estoppel, waiver or contributory negligence, so as to bar recovery.

In ruling on a defendant's motion for directed verdict, the court must accept as true every fact and circumstance which plaintiff's evidence tends to prove; plaintiff is entitled to the benefit of every inference of fact which may reasonably be drawn therefrom; the evidence must be considered in the light most favorable to the plaintiff, and such motion can be sustained only when the facts in evidence and the legitimate inferences to be drawn therefrom are so strongly against plaintiff as to leave no room for reasonable minds to differ. Zachary v. Kroger, Inc., Mo.App., 332 S.W.2d 471, 473. If, therefore, we accept as completely true everything testified to by Kaplan and treasurer Zobel, we must conclude that Kaplan asked Hoffman, the agent of Jones, to procure liability insurance covering plaintiff on Howard's truck and Hoffman agreed to procure such insurance. This is so, even though there is no proof as to contemplated amount of coverage, the kind of truck Howard owned, and no written application was ever made. Nei-

ther Hoffman nor Jones procured any coverage on the Howard truck and plaintiff suffered a liability loss. Does this evidence make a submissible case on the contract feature? We believe it does.

■ It is generally true that a broker or agent who undertakes to procure insurance for another and fails or neglects to do so is liable for damages resulting therefrom.

"It may be laid down as a general rule that a broker or agent who, with a view to compensation for his services, undertakes to procure insurance for another, and, unjustifiably and through his fault or neglect, fails to do so, will be held liable for any damage resulting therefrom. The agent or broker is liable on the theory that he is the agent of the insured in negotiating for a policy and that he owes a duty to his principal to exercise reasonable skill, care, and diligence in effecting the insurance". 29 Am.Jur. Insurance, p. 561, Sec. 163.

"A broker or agent who has undertaken to procure insurance is liable to his principal for the damage suffered by reason of a want of valid insurance resulting from his negligence or other breach of duty in failing to secure or replace insurance in accordance with his undertaking; * * *". 44 C.J.S. Insurance § 172, p. 861.

"An insurance agent is personally lia ble to an applicant in damages for a breach of his contract or agreement to procure insurance.

* * * * * *

"If a broker or agent of the insured neglects to procure insurance, or does not follow instructions, or if the policy is void or materially defective, through the agent's fault, he is liable to his principal for any loss he may have sustained thereby". Appleman, Insurance Law and Practice, Vol. 16, pars. 8831, 8841.

In Harris v. A. P. Nichols Inv. Co., Mo. App., 25 S.W.2d 484, plaintiff was a dealer in valuable linens and laces which he sold personally, direct from his automobile. Defendant was a corporation engaged in the insurance brokerage and agency business. Defendant's agent and employee, after contact with another agency, told plaintiff that they could procure a policy insuring him against theft of the merchandise from his automobile for $20 per thousand. He told them to order such a policy in the amount of $2,000. A few days later and on June 15, 1922, he received a policy and paid a premium of $40 therefor. The policy did not cover theft from the car. Neither defendant nor plaintiff examined the policy. About October 5, 1922, less than four months later, plaintiff suffered a loss through theft from his automobile of merchandise valued in excess of $2,000. The court, sitting in a jury waived case, found the issues for plaintiff. This finding and judgment was affirmed on appeal and the court made these statements:

"* * * it is apparent this is not an action by the plaintiff, as the insured, and a company upon its contract or policy of insurance, but one for a breach of an original undertaking on the part of the defendant as plaintiff's agent to secure a definite kind of policy of theft insurance. In argument, defendant leans heavily for support on the contention that a failure of insured to read and familiarize himself with provisions of a policy of insurance is fatal to his recovery thereon. (citing numerous cases). We do not deem these cases in point or applicable to the matters here presented as they deal with questions between an insured and the insurer. Generally an insurance broker is the agent of the insured and not the insurer. (citing cases). Although there are exceptions, and each case must rest on its own facts, we conclude that the relationship which existed between plaintiff and defendant in the case at bar was that of principal and agent. Within the fiduciary capacity

thus created, plaintiff was entitled to rely upon and believe that, pursuant to the duties assumed by such agent, and under his instructions, a policy of the kind desired was mailed to plaintiff and received by him. * * * We are of the opinion that an agent cannot avoid liability to his principal for an alleged failure on the part of such principal to determine, prior to the occurrence of a loss or damage (appearing as a direct result of nonperformance by such agent of his undertaking and instructions), whether such agent has consummated the act for which he was employed.

"Nor is there any basis for the assertion that plaintiff is estopped to contend defendant failed in this regard. It has been uniformly declared, where parties have equal means of knowledge, there is no estoppel in favor of either".

In Zeff Distributing Co., Inc. v. Aetna Casualty and Surety Co., Inc. and Swade Insurance Co., Mo.Sup., 389 S.W.2d 789, 795, plaintiff requested his agent or broker, Swade Insurance Company, to procure theft insurance. A binder was issued by Aetna Insurance Company. Before the policy was issued, Aetna learned of a prior burglary and advised Swade it would not issue the policy or carry the risk beyond the 60 day binder period. Swade did not procure insurance elsewhere or notify plaintiff of Aetna's refusal to insure. There was a loss. The trial court directed a verdict for Aetna, which the Supreme Court affirmed. The verdict of the jury for defendant Swade was reversed and a new trial ordered for an instruction error. The court said: "Our view is that plaintiff made a submissible jury case". "Our conclusion is that plaintiff's evidence was sufficient to show failure of Swade to exercise reasonable skill, care and diligence in replacing the Aetna insurance".

In Ursini v. Goldman, 118 Conn. 554, 173 A. 789, the plaintiff owned and operated a wholesale grocery store. Defendant was a licensed insurance broker and re-peatedly solicited plaintiff to insure against burglary, but plaintiff did not do so. In August, 1928, the store was burglarized. On the following day plaintiff told defendant to obtain for him a $2,000 burglary policy and defendant agreed to do so. A casualty company issued a $2,000 burglary policy to plaintiff but it contained a provision avoiding the risk if the premises had been burglarized within a period of five years. A second burglary occurred in December, 1928, and the insurance company not being liable, plaintiff sued the broker. There was a verdict and judgment for plaintiff. On appeal the court held that an insurance broker is the agent of the insured in negotiating for an insurance policy and owes a duty to exercise proper skill, care and diligence and for failure to do so, is liable for any resulting loss. It was further specifically ruled that the principal may sue either for breach of contract or in tort for breach of duty. In that case the trial court charged the jury "that if the jury found that the plaintiff did neglect his duty in informing himself of the contents of the policy he would be precluded thereby from recovery". This instruction or charge recognized, applied and submitted to the jury what we might describe as the commingled defense of estoppel, waiver and contributory negligence. It should be noted that there the policy on its face appeared to be what the insured wanted and believed he had purchased. It covered burglary and was for $2,000, the amount applied for. The departure was not patent, but rather a latent exclusion provision which was discoverable only after careful examination of the body of the policy.

The District Court of Appeal of Florida, Second District, in First Nat. Ins. Agency, Inc. v. Leesburg Transfer & Storage, Inc., 139 So.2d 476, 479, 480, had these two questions before it. The defendant broker, according to plaintiff, agreed to secure additional insurance on plaintiff's building—specifically to double the amount from $17,-000 to $34,000. Defendant denied making the agreement, but the court in a jury waived case found for plaintiff. The alleged

oral agreement took place in December, 1958. In July, 1959, "plaintiff received renewal certificates to reflect the annual renewal of its already existing insurance coverage of $17,000." In November, 1959, the premises were completely demolished by fire. The trial court declined to permit defendant to plead or present the defense of estoppel and struck its pleading raising that defense. The appellate court, after first commenting that the issues were of first impression in Florida, remanded for new trial and said:

"However, the liability of a broker for damages resulting from a failure to provide insurance, having agreed so to do, is elsewhere almost universally recognized. The cause of action was given succinct expression in Gay v. Lavina State Bank, 1921, 61 Mont. 449, 202 P. 753, 755; 18 A.L.R. 1204.

\* \* \* \* \* \*

"The breach of the broker's duty to procure insurance is indicated in the above quotation and has elsewhere been held to sound in negligence as well as in contract".

On the defense of estoppel the court commented and ruled that where the breach of the alleged oral contract occurred eight months before the owner received renewal certificates showing there had been no increased coverage and four months before the loss and did nothing, the defense of estoppel was available to the defendant broker, and said:

"Under the facts of this case, a holding that the defense of estoppel does not lie would be tantamount to a green light for anyone who sustains a fire loss to pursue the enforcement of possibly non-existent insurance contracts".

While the evidence in our case is not abundantly clear and some of the usual component parts of a contract (the amount of liability coverage for one) are not covered, we rule that the testimony of Mr. Kaplan and Mr. Zobel for plaintiff corpora-

tion was sufficient to take to the jury the question as to whether or not the contract was entered into. It was therefore error to direct a verdict unless the uncontroverted and conceded facts show that plaintiff is estopped, is contributorily negligent or has waived its rights under the contract, all as a matter of law, so as to preclude enforcement of the contract.

We are faced first of all with plaintiff's assertion that estoppel, waiver and contributory negligence are affirmative defenses and unless affirmatively pleaded are waived. Sections 55.10 and 55.43, V.A.M.R. so state. The defendants did not in any respect affirmatively plead such a defense. The first ground of their motions for directed verdicts present it this way: "Plaintiff accepted without protest or rejection the policy issued and subsequently renewed". At the trial, no testimony on behalf of defendant was adduced since a verdict was directed at the close of plaintiff's case. The transcript contains no testimony from the defendant Hoffman, who was an active and ever present participant in most of the proceedings. Consideration of the cross-examination of Mr. Kaplan, on whose testimony plaintiff's case must stand or fall, reveals that really only two factual questions were disputed or litigated during the trial, namely, (1) did Hoffman agree to procure liability insurance on Howard's truck and (2) if he did, is plaintiff company, by its conduct, estopped to enforce such contract?

We find the following in 31 C.J.S. Estoppel § 153(3), pp. 754, 755:

"The failure to object to evidence of estoppel waives the objection that the estoppel was not specially pleaded. Further, where the facts showing estoppel or waiver are in issue and are admissible for any purpose under the pleadings, estoppel is available as a defense without being specially pleaded, and evidence of estoppel is admissible without being pleaded in order to rebut evidence introduced by the opposite party. An

estoppel or waiver need not be pleaded where it appears in the case made by the party against whom it is invoked. An estoppel against plaintiff is available to defendant, although not pleaded, where it is established by plaintiff's evidence, * * *".

In Woolfolk v. Jack Kennedy Chevrolet Company, Mo.App., 296 S.W.2d 511, 516, it was ruled that the defense of estoppel was available although not pleaded where the issue was contested during the trial. The ruling was in this language:

"There is no merit in the contention made in the motion that the defense relied upon by defendant was not affirmatively pleaded. The fact is that the issue was hotly contested—it was the chief issue that was tried and submitted. By our code of civil procedure when issues not embraced in or raised by pleadings are tried by express or implied consent of the parties, they shall be treated as if they had been properly raised by the pleadings".

We rule that the defense of estoppel is still available to defendants and must be considered in this case even though not specifically and affirmatively pleaded.

■ To justify a directed verdict on the basis of estoppel, a court must hold that there was an estoppel as a matter of law.

· "Where the facts are undisputed and only one inference may be drawn therefrom, the question of estoppel is one of law, but otherwise it is one of fact". 31 C.J.S. Estoppel § 163, p. 784.

An appellate court in Connecticut (Ursini v. Goldman, supra) where the insured kept his burglary policy for four months without discovering he was not covered because of an exception if his building had' been burglarized within the preceding five years, ruled the question of estoppel under those facts was one of fact for the jury.

In First Natl. Ins. Agency, Inc. v. Leesburg, supra, where plaintiff in July received renewal notices indicating the contemplated doubling of the insurance had not taken place and took no action until after loss in the following November, the Florida court ruled estoppel to be a permissible and proper defense and remanded for a new trial on all issues.

The defendants rely most strongly on the case of Woolfolk v. Jack Kennedy Chevrolet Co., Mo.App., 296 S.W.2d 511. In that case plaintiff was employed as a "driver and owner of a taxicab". Defendant was an automobile dealer. Plaintiff purchased an automobile from defendant. Appearing on the chattel mortgage given as part of the purchase price appeared the following: "Insurance payable to purchaser and mortgagee, covering $50.00 ded. $163." It was undisputed that defendant agreed to purchase such insurance for plaintiff, but the insurance company, learning that the vehicle was to be used as a taxicab, declined to write coverage for both the owner and the mortgagee, and issued only single insurance coverage to Mercantile Trust Company, purchaser of the mortgage. Defendant refunded and plaintiff admitted receiving $1.60 in refund of premium. Defendant produced copy of a letter which he said he wrote to plaintiff, advising that only single coverage could be procured and reciting enclosure of the $1.60 premium refund. Plaintiff denied ever receiving such a letter. The daily report from the insurer was received by plaintiff three or four days after delivery of the car. It and the policy showed plainly insurance only to the Trust Company. Plaintiff said he did not read the daily report or the policy which was dated April 29, 1954, but put them away. On July 31, 1955, 15 months later, the automobile was demolished in a collision. The trial resulted in a jury verdict and judgment for plaintiff. On appeal it was held that the evidence was sufficient for submission of whether or not there was a contract. The

appellate court, however, also ruled that plaintiff "accepted the performance by defendant as a full compliance with, and discharge of, its obligation under the contract". The court reasoned the matter this way:

"By plaintiff's admission he received the daily report three or four days following delivery of the automobile. He was a literate individual. He had purchased automobiles and had been engaged in the taxi business prior to the instant transaction, and was, at least to a degree, possessed of business experience. Ample opportunity was afforded plaintiff to read the copy of the policy and the endorsements, and by so doing he would have become fully acquainted with the type of coverage that was in existence. He chose to do nothing after receiving the daily report for a period of approximately fifteen months. It cannot avail plaintiff to say, as he did, that 'I did not read any part of it (daily report) but put it in my box.' It is well settled that one who can read and does not read is foreclosed by his own negligence. 'The law affords to every one a reasonable protection against fraud in dealing, but it is not an indulgent guardian which can go to the romantic length of giving protection against the consequence of indolence, folly or careless indifference to the ordinary and accessible means of information.' Dickinson v. Bankers Life & Casualty Co., Mo. App., 283 S.W.2d 658, loc. cit. 663. See, also Edmund S. Mills Corp. v. Stinebaker, Mo.App., 67 S.W.2d 821, loc. cit. 822, and cases cited."

Defendant has invited our attention to numerous cases where plaintiffs in their suits were impaled on the horns of estoppel. We shall list seven of those cases by name.

 Edmund S. Mills Corp. v. Stinebaker, Mo.App., 67 S.W.2d 821. Here the maker of a promissory note was held estopped for failure to read the note he signed.

In the other six cases (Zeilman v. Central Mut. Ins. Ass'n., 224 Mo.App. 145, 22 S. W.2d 88; Muller v. Mutual Benefit Health & Accident Ass'n., 228 Mo.App. 492, 68 S. W.2d 873; Steward v. Mutual Life Ins. Co. of Baltimore, Mo.App., 127 S.W.2d 22; Neuner et al. v. Gove, Mo.App., 133 S.W. 2d 689; Evers v. Brotherhood of Railroad Trainmen, Mo.App., 172 S.W.2d 899 and Hartford Accident and Indemnity Co. v. Farmington Auction, Inc., Mo.App., 356 S. W.2d 512 suit was against the insurer; that is, against the insurance company, and not against the broker or agent. The broker in the procurement of insurance is the agent of the insured and therefore owes a greater duty to the insured than does an insurance company with whom he contracts. The insured must act promptly when dealing with the insurance company if he is to escape estoppel. The rule was stated by this court in Neuner v. Gove, Mo.App., 133 S.W.2d 689, 694:

"However, an application for insurance is merely an offer, which may be accepted or rejected by the company. The sending of a different policy than that applied for constitutes a counteroffer. The insured has a reasonable time to accept or reject the policy and if he keeps it a reasonable length of time, he is deemed to have accepted the policy or counteroffer. 32 C.J. pp. 1102, 1104, 1105, 1107. Where he keeps the policy an unreasonable length of time, he accepts it as a counter-offer, although he does not read it. Faith v. Home Life Ins. Co., 203 Mo.App. 196, 208 S.W. 124; Home Ins. Co. of New York v. Horrell, 206 Mo.App. 352, 227 S.W. 830. If he is unable to read it or to understand it, it is his duty to have someone else read it to him or have its terms explained to him and, he is not permitted to rely on any statements made by a soliciting agent, who has no authority to make contracts of insurance, concerning its provisions. (citing cases)".

■ Plaintiff contends its obligation to examine the policy else be guilty of contributory negligence is less exacting when dealing with a broker than when contracting with an insurance company. We agree and believe this is primarily so because the broker or intermediary is the agent of the insured, whereas the insurance company is the other ultimate contracting party. We doubt if the broker occupies a true fiduciary relationship—he is hardly a trustee. We believe agency properly describes the relationship.

■ Plaintiff says the defendant in Woolfolk v. Jack Kennedy Chevrolet Company was an automobile dealer—not an insurance broker and (a) was not an expert on insurance as a broker is presumed to be and (b) does not occupy a fiduciary relationship as does the broker. In either case—in Woolfolk as in ours—the defendant was plaintiff's agent and contracted (according to plaintiff's evidence) to procure a certain insurance coverage. A person is not required to be so alert and watchful in examining a policy procured by his agent as where it was delivered direct by the insurance company. In this latter event, two contracting parties are dealing with each other at arms' length and negligence or delay in examining the contract is less excusable than if it were procured by the insured's own agent. In Woolfolk and in our case defendant was plaintiff's agent and we believe there is little distinction to be made because one was an automobile dealer and one an insurance agent and broker.

In First Natl. Ins. Agency, Inc. v. Leesburg, supra, specifically involving an insurance broker, the Florida court approved estoppel as a defense and commented that a ruling to the effect that estoppel would not lie " * * * would be tantamount to a green light for anyone who sustains a fire loss to pursue the enforcement of possibly non-existent insurance contracts".

The rule requiring a person to inform himself as to his purchase is less exacting as to insured's own representative and broker who has procured an insurance policy for him than as to a contract purchased direct. However, this does not mean that an insured can close his eyes and go on forever and act as an incompetent ward with the broker as his guaranteeing guardian.

■ In determining if a litigant's neglect, delay or poor judgment results in harnessing him with the penalties of estoppel or contributory negligence, courts and juries do and should consider his maturity, experience and knowledge regarding the realm of human behavior in which his unwise or unreasonable acts or failure to act arise. Less is expected of a child than of an adult. More is demanded of a knowledgeable person than of one unfamiliar with the subject matter or inexperienced therein. What about our plaintiff in the case before us? It is a business corporation and has been in existence for many years. For at least 20 years it has corporately used insurance and has bought insurance policies of numerous kinds from many different agencies. Mr. Peltzie took care of insurance matters until his death in 1956. If no one in the plaintiff corporation assumed this particular duty when Peltzie relinquished it, was this negligence on the part of the plaintiff corporation? President Kaplan was able to read and to understand insurance contracts, or at least the one involved in this litigation because he said he read it and understood it, but he did not do so until after the Howard accident. Neither he nor any other corporate officer or employee read it before the Howard accident even though the policy, counting the two renewals, was in their possession from January 3, 1957, until January 16, 1959, the date of the accident. If a corporate insured, with intelligent and knowledgeable officers and employees, is to be excused from reading its insurance policy and two

renewals thereof for more than two years, then any insured ought to be excused forever from reading an insurance contract procured from a broker insofar as liability of the broker is concerned. In addition, Mr. Kaplan knew that the premium on this policy was almost exactly the same as on its predecessor which was bought from Mastin and which covered only non-owned and occasionally used automobiles. Mr. Kaplan said he "assumed" Howard carried liability, but neither he nor any other corporate person made an effort to find out. He thought this policy transferred from Mastin to Hoffman covered Howard, but neither he nor any other corporate person made an effort to find out. We do not believe that this corporate plaintiff can justly plead in avoidance of the pains and penalties of estoppel and contributory negligence, either lack of maturity, insufficient time or want of opportunity to examine the policy, general lack of education, inexperience in insurance matters, or that it affirmatively exercised reasonable care.

We have considered remanding this case for retrial and for submission of both the issues—contract and estoppel—to the jury. However, we believe that under the facts already developed (and which are not susceptible of change) the plaintiff is guilty of contributory negligence and is estopped to sue for breach of contract. In our opinion reasonable men could come to only this conclusion. This being so, the trial court did not err in directing a verdict for the defendants.

The judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.